No. 3--00--0186

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2001

WILLIAM McNEIL, ) Appeal from the Circuit Court

 ) of the 12th Judicial Circuit,

Plaintiff-Appellant, ) Will County, Illinois

 )

v. ) 

 ) 

LAMARK CARTER, Warden, )

KUL B. SOOD, PAULINE PEILER, )

NICOLE BELL, C. JOHNSON, ) No. 98--MR--1073

D. NANCE, and A. FABIANOWICZ, )

Each Indiv. and in His or Her 
) 

Official Capacity, ) Honorable

                                ) Edwin Grabiec

Defendants-Appellees. ) Judge, Presiding

_________________________________________________________________

PRESIDING JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

The plaintiff, inmate William McNeil, filed a complaint against defendants Lamark Carter, warden at Joliet Correctional Center; Doctor Kul B. Sood, medical director; nurses Pauline Peiler and Nicole Bell; and several staff members at the prison.  Count I of the complaint alleged that the defendants knowingly and intentionally violated the Unified Code of Corrections (Code) (730 ILCS 5/1--1--1 
et
 
seq.
 (West 1998)), resulting in injury to the plaintiff.  Count II claimed that Dr. Sood, nurse Bell and several correctional officers committed a tortious assault against McNeil by refusing to feed him.  The trial court dismissed the complaint with prejudice.  We affirm. 

BACKGROUND

The plaintiff was incarcerated with the Department of Corrections beginning in 1982.  Upon admission, he was given a medical examination.  The examination revealed the plaintiff was in good health and had no communicable diseases or infections.  In March of 1989, the plaintiff was diagnosed with hepatitis B.  One year later, he tested positive for tuberculosis.  According to the plaintiff, he also suffers from renal insufficiency, hypertension and low blood sugar.  The plaintiff's renal failure allegedly resulted from a kidney infection he contracted when a cellmate used the plaintiff's drinking cup.  The cellmate had a "throat virus."  The plaintiff became aware of his renal condition in 1993.  To properly treat his renal insufficiency, the plaintiff was placed on a special diet.

In October of 1998, the plaintiff refused to eat the dietary meals provided to him.  On more than one occasion, he told the correctional officers who delivered the meal that he would not eat it.  He claimed that the food on the tray was detrimental to his renal condition and his hypertension.  The officers informed him that they were ordered to provide the plaintiff with the diet tray.  He wrote to Dr. Sood and asked the doctor to take him off the diet because he thought his diet should be closely monitored by a dietitian.  The guards continued to provide the plaintiff with dietary trays.  The plaintiff refused to eat the meals.  He told nurse Peiler that he was not eating because the staff refused to feed him.

During that same month, the correctional officers informed the plaintiff that he had been assigned a cellmate and would have to move.  The plaintiff refused to move into a shared cell, claiming that he was contagious.  A staff nurse advised the plaintiff that he could only infect his cellmate if they engaged in sexual intercourse or shared intravenous drug needles.

The plaintiff filed a complaint against the defendants in December of 1998.  In count I of his complaint, the plaintiff alleged that: (1) the defendants insufficiently tested the prisoners for communicable diseases, or in the alternative ignored the results of the tests, and forced infectious inmates to share cells with healthy inmates; and (2) Dr. Sood incorrectly ordered the plaintiff to be given a special diet and failed to have someone monitor his condition while he was on the diet.  The plaintiff claimed that these acts constituted knowing and intentional violations of sections 1--1--2 (purpose), 3--2--2 (powers and duties), 3--8--2 (social evaluation of inmates), and 3--8--7 (disciplinary procedures) of the Code.  730 ILCS 5/1--1--2, 3--2--2, 3--8--2, & 3--8--7 (West 1998). 

Count II of the complaint alleged that the defendants committed the intentional tort of assault by denying the plaintiff food.  The plaintiff did not allege any immediate physical or emotional injury as a result of the denial.  

The defendants sought separate counsel and filed two motions to dismiss pursuant to section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 1998)).  The defendants claimed that the cause should be dismissed for several reasons, including that:  (1) the Code did not grant the plaintiff a private cause of action; (2) the statute of limitations barred several of the plaintiff's allegations; (3) the plaintiff's second claim was substantially insufficient in the law; and (4) the court lacked jurisdiction over the subject matter because both claims were barred by the doctrine of sovereign immunity.  The trial court dismissed the complaint for "the reasons advanced by the defendants." 

STANDARD OF REVIEW

In ruling on a motion to dismiss under section 2--619, the court must consider all well-pled facts in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff.  
Storm & Associates, Ltd. v. Cuculich
, 298 Ill. App. 3d 1040, 700 N.E.2d 202 (1998).  Our review of a trial court's dismissal of a complaint is 
de
 
novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

DISCUSSION

Initially, we note that the plaintiff argues negligent delegation of medical duties in his brief on appeal.  He also insists that the defendants should be held liable on a theory of vicarious liability for negligent supervision.  However, his complaint filed before the trial court does not mention a general negligence cause of action.  Since such claims were raised for the first time on appeal, we will not address their merits.  See 
Archer Daniels Midland Co. v. Department of Revenue
, 170 Ill. App. 3d 1014, 524 N.E.2d 1010 (1988).  Instead, we focus our discussion on the claims the plaintiff raised in the complaint below and the propriety of their dismissal.  

The plaintiff first argues that the trial court erred in dismissing count I of his complaint.  He maintains that, contrary to the defendants' contention, the Code does provide a private cause of action. 

To determine whether a statute creates a private right of action, the court must focus on the intent of the legislature.  
Moore v. Lumpkin
, 258 Ill. App. 3d 980, 630 N.E.2d 982 (1994).  When a statute does not expressly grant a private right of action, the court should infer a private cause of action cautiously.  
Moore
, 258 Ill. App. 3d 980, 630 N.E.2d 982.  Before a private cause of action will be inferred, the plaintiff must demonstrate that: (1) he is a member of the class for whose benefit the statute was enacted; (2) a private cause of action is consistent with the underlying purpose of the statute; (3) his injury is one the statute was designed to prevent; and (4) a private cause of action is necessary to provide an adequate remedy for violation of the statute.  
Noyola v. Board of Education of City of Chicago
, 284 Ill. App. 3d 128, 671 N.E.2d 802 (1996).   

As stated in section 1--1--2, the purpose of the Code is to: 

"(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders; 

(b) forbid and prevent the commission of offenses; 

(c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and 

(d) restore offenders to useful citizenship."  730 ILCS 5/1--1--2 (West 1998).

Applying the factors, we find that the Code does not imply a private right of action for an inmate who receives inadequate medical attention.  The plaintiff is an adjudicated offender.  In his complaint he claimed that he was arbitrarily and oppressively treated by the warden, Dr. Sood, and his nurses.  Thus, the plaintiff belongs to one of the classes of people for whose benefit the statute was enacted.  

However, the general purpose of the statute does not lend itself to a private cause of action for medical mistreatment of prisoners.  The Code was primarily enacted to provide the courts with direction when imposing sentences with the desire to return an offender to useful citizenship.  See 
People v. Haynes
, 41 Ill. App. 3d 369, 355 N.E.2d 97 (1976); 
People v. Mahle
, 57 Ill. 2d 279, 312 N.E.2d 267 (1974).  The ultimate goal of the Code's provisions is to protect society.  
People v. Howell
, 16 Ill. App. 3d 989, 307 N.E.2d 172 (1974).  We therefore conclude that the statute was not generally intended to protect prisoners from inadequate medical care while incarcerated.  Proper medical supervision is necessary and should be provided to every inmate.  However, when read as a whole, the primary purpose and function of the Code is to protect the public.  See 
Ashley v. Snyder
, 316 Ill. App. 3d 1252, 739 N.E.2d 897 (
2000) (holding prison regulations were never intended to confer rights on inmates or serve as a basis for constitutional claims).  Consequently, the second factor to imply a private cause action is lacking.

The fourth factor for allowing a private action is lacking as well.  Relief through a private cause of action is not necessary to provide an adequate remedy for violating a provision of the Code.  A private right of action will be permitted only if the statute would be ineffective without such relief.  
Fisher v. Lexington Health Care, Inc.
, 188 Ill. 2d 455, 722 N.E.2d 1115 (1999).  Under section 3--8--8 of the Code, an inmate may bring his claim of misconduct before the administrative review board.  This procedure allows a prisoner to communicate his grievance to the warden and to obtain relief from the condition or action.  730 ILCS 5/3--8--8 (West 1998).  Moreover, a violation of a prisoner's right to adequate medical care also gives rise to a federal cause of action under the eighth amendment.  
Estelle v. Gamble
, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).  Therefore, it is unnecessary to infer a private cause of action under the Code to provide inmates with an adequate remedy for violations of the Code.  See 
Abbasi v. Paraskevoulakos
, 187 Ill. 2d 386, 718 N.E.2d 181 (1999) (court will not infer private action under statute when such action would only duplicate an existing cause of action).  The trial court correctly dismissed count I of the complaint.     

Next we will consider plaintiff's second count of common law assault.  A claim of assault must include an allegation of a reasonable apprehension of an imminent battery.  
Rosenberg v. Packerland Packing Co.
, 55 Ill. App. 3d 959, 370 N.E.2d 1235 (1977).  The elements of a battery must include an intentional act on the part of the defendants and a resulting offensive contact with the plaintiff's person.  
McNeil v. Brewer
, 304 Ill. App. 3d 1050, 710 N.E.2d 1285 (1999).  The plaintiff alleged that the defendants intentionally denied him food.  More accurately, he alleged that the defendants denied him an appropriate dietary meal and that such denial could have caused him to die.  Clearly, these allegations failed to include the necessary elements for an assault.  The plaintiff did not claim that he feared immediate death due to some form of physical contact.  Nor did he claim that the defendants threatened physical violence against him if he refused to eat the food they provided.  Thus, count II of the complaint was properly dismissed because the plaintiff failed to state a cause of action. 

CONCLUSION 

We find that the trial court properly dismissed count I of the plaintiff's complaint because the Code does not provide a private cause of action for prisoners who receive inadequate medical care.  Further, we affirm the dismissal of count II because the plaintiff failed to state a cause of action upon which relief could be granted.  We need not address the viability of the alternative grounds upon which the trial court may have relied in dismissing the complaint.  See 
Williams v. Board of Education of the City of Chicago
, 222 Ill. App. 3d 559, 584 N.E.2d 257 (1991) (reviewing court may uphold dismissal on any grounds supported by the record). 

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN and HOLDRIDGE, J.J., concurred.