# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Dupree v. Hardy*, 2011 IL App (4th) 100351

---

| | |
|---|---|
| Appellate Court Caption | CEDRIC DUPREE, Plaintiff-Appellant, v. MARCUS HARDY, Warden; JOSEPH MATHY, Acting Warden; and ROGER WALKER, Director, The Department of Corrections, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-10-0351 |
| Filed | July 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An inmate's petition for a writ of *mandamus* alleging that prison officials unlawfully failed to restore his access to the prison's exercise yard and seeking the removal of all inmate disciplinary reports from his records and the return of his confiscated "legal and personal property" was properly dismissed as frivolous due to the lack of an arguable basis in the law or fact and the absence of supporting evidence. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 09-MR-55; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Cedric Dupree, of Pontiac, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Turner and McCullough concurred in the judgment and opinion.


## OPINION

¶ 1    In May 2009, plaintiff, Cedric Dupree, an inmate at Pontiac Correctional Center, *pro se* filed a petition for writ of *mandamus* under article 14 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/14-101 through 14-109 (West 2008)), alleging that defendants, Marcus Hardy (Pontiac's warden), Joseph Mathy (Pontiac's acting warden), and Roger Walker (Director of the Department of Corrections (DOC)), acted unlawfully by depriving him of certain property, exercise privileges, and administrative action.

¶ 2    In October 2009, Walker filed a motion to dismiss Dupree's petition under section 2-619(a)(9) of the Civil Code (735 ILCS 5/2-619(a)(9) (West 2008)). In January 2010, Hardy and Mathy filed a motion to dismiss Dupree's petition under section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2008)). At an April 2010 hearing on defendants' respective motions, the trial court (1) dismissed Dupree's *mandamus* petition and (2) ordered Dupree to pay the filing fees and court costs associated with that petition, which the court characterized as "frivolous."

¶ 3    Dupree *pro se* appeals, making several claims related to the trial court's dismissal of his *mandamus* petition. We affirm.


¶ 4                              I. BACKGROUND

¶ 5    In May 2009, Dupree *pro se* filed a petition for writ of *mandamus*, alleging that Hardy, Mathy, and Walker acted unlawfully by failing to (1) restore his access to the prison's exercise yard, (2) remove all existing inmate disciplinary reports (IDRs) from his prison record because Walker failed to personally review and finalize each report, and (3) return his confiscated "legal and personal property" after Dupree had the relevant IDR expunged. Dupree's petition also sought $527 in damages for his lost, stolen, and confiscated property. That same day, Dupree also filed a motion for appointment of counsel, which the trial court denied three days later.

¶ 6        Following an August 18, 2009, review hearing, the trial court entered a docket entry (1) noting that a return of service had yet to be filed and (2) ordering the Attorney General for the State of Illinois to file an appearance and responsive pleading within 45 days. A week later, Dupree *pro se* filed a motion for default judgment.

¶ 7        On October 7, 2009, the Attorney General–on Walker's behalf–filed a motion to dismiss Dupree's petition for writ of *mandamus* under section 2-619(a)(9) of the Civil Code (735 ILCS 5/2-619(a)(9) (West 2008)). In the memorandum of law in support of that motion, the Attorney General noted that as of October 2009, Hardy and Mathy had not been served with Dupree's complaint.

¶ 8        The following day, Dupree *pro se* filed a motion to supplement relief, requesting that the trial court permit him to supplement the relief he sought in his May 2009 petition for writ of *mandamus*. In particular, Dupree requested (1) a declaratory judgment that defendants' unlawful confiscation of his "legal property" was unconstitutional and posed "a legal [hindrance]" and (2) an order, requiring defendants to provide him copies of all the grievances he had filed and the respective responses because defendants had destroyed those documents. On October 13, 2009, Dupree *pro se* filed a motion for stay, essentially requesting that the court address his motion for default judgment before requiring him to provide an answer to Walker's motion to dismiss.

¶ 9        Following a November 2009 hearing, the trial court (1) denied Dupree's motion for default judgment, finding that no evidence was shown that Hardy and Mathy were served with Dupree's petition for writ of *mandamus*; (2) denied Dupree's motion for a stay; and (3) granted Dupree's motion to supplement relief.

¶ 10       On January 5, 2010, Dupree *pro se* filed (1) an answer to Walker's motion to dismiss and (2) a motion for default judgment against Hardy and Mathy, which was premised on a May 2009 docket entry that showed his *mandamus* petition had been mailed to each defendant. On January 21, 2010, the Attorney General–on behalf of Hardy and Mathy–filed a motion for leave to file a motion to dismiss under section 2-615 of the Civil Code and supporting memorandum of law *instanter* (735 ILCS 5/2-615 (West 2008)). In that motion, the Attorney General explained that Hardy and Mathy had not joined Walker's October 2009 motion to dismiss because of a filing error whereby documents from the instant case had been filed with documents from one of three other pending cases that all involved Dupree and defendants. The Attorney General explained further that Dupree would not be prejudiced because the motion to dismiss proffered by Hardy and Mathy alleged the same arguments as Walker's motion to dismiss.

¶ 11       At a March 2010 hearing, the trial court (1) denied Dupree's motion for default judgment, (2) granted Hardy and Mathy leave to file their motion to dismiss, and (3) granted Dupree 28 days to file a response to that motion. The court's docket entry also noted that it would base its judgment on the parties' written arguments only. In April 2010, Dupree *pro se* filed his answer to the motion to dismiss filed by Hardy and Mathy.

¶ 12       In April 2010, the trial court entered the following docket entry:

        "In his *mandamus* petition, [Dupree] seeks the return of personal property and monetary compensation; restoration of yard privileges; and pre-IDR status. Yard

privileges and IDR status are discretionary. Therefore, [Dupree] is not entitled to *mandamus* relief. [Dupree] has sought a declaratory judgment on the issue of the confiscation of personal property. However, [Dupree] has failed to state a proper cause of action for declaratory relief. For these reasons, the Motion to Dismiss is granted. Furthermore, the court finds that [Dupree's] filings are frivolous as they lack an arguable basis in either the law or fact and that the allegations are not supported by any evidence. [Dupree] has filed over 10 *mandamus* petitions during his incarceration at Pontiac. Therefore, [Dupree] is ordered to pay the full filing fees and actual court costs incurred in connection with this matter."

¶ 13    This appeal followed.


¶ 14                                    II. ANALYSIS

¶ 15    Dupree argues that the trial court erred by dismissing his petition for writ of *mandamus*. Specifically, Dupree contends that he stated a cause of action for *mandamus* relief by asserting that defendants acted unlawfully when they failed to (1) restore his access to the prison's exercise yard, (2) remove all existing IDRs from his prison record because Walker failed to personally review and finalize each report, and (3) return his confiscated "legal and personal property" after Dupree had the relevant IDR expunged. Dupree also argues that the court erred by ordering him to pay filing fees and court costs associated with his petition for writ of *mandamus* and denying his request for a declaratory judgment. Finally, Dupree argues that the court abused its discretion by failing to (1) appoint counsel to represent him and (2) enter default judgment against defendants. We address Dupree's arguments in turn.


¶ 16                    A. The Trial Court's Dismissal of Dupree's
                              Petition for Writ of *Mandamus*

¶ 17                      1. *A Section 2-615 Motion To Dismiss*
                              *and the Standard of Review*

¶ 18    We first note that although Walker's October 2009 motion to dismiss was brought under section 2-619(a)(9) of the Civil Code, Walker argued that Dupree's *mandamus* petition was legally insufficient, which is a proper challenge under section 2-615 of the Civil Code. Thus, we review the substance of both motions to dismiss under section 2-615 of the Civil Code. See *Winters v. Wangler*, 386 Ill. App. 3d 788, 792-93, 898 N.E.2d 776, 780 (2008) (disregarding the defendant's section 2-619(a)(4) designation on his motion to dismiss and instead reviewing it under section 2-615 because the defendant challenged the legal sufficiency of the plaintiff's complaint).

¶ 19    A motion to dismiss under section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2008)) "challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). When reviewing a trial court's dismissal of a complaint under section 2-615 of the Civil Code, we accept as true all well-pleaded facts contained within the complaint along with the reasonable inferences that may be drawn therefrom in the light most favorable to the

plaintiff. *Napleton v. Village of Hinsdale*, 374 Ill. App. 3d 1098, 1101, 872 N.E.2d 23, 27 (2007). However, this court will disregard mere conclusions of law or facts not supported by specific factual allegations. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 282, 856 N.E.2d 542, 546 (2006). We review *de novo* a trial court's ruling under section 2-615 of the Civil Code. *Poruba v. Poruba*, 396 Ill. App. 3d 214, 215, 919 N.E.2d 1066, 1067 (2009).

¶ 20                                    2. *Dupree's Mandamus Claims*

¶ 21                                       a. *Mandamus* Relief

¶ 22       In *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433-34, 876 N.E.2d 659, 663-64 (2007), the Fifth District discussed *mandamus* relief, stating, in pertinent part, as follows:

> "*Mandamus* is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill. App. 3d 1130, 1133, 835 N.E.2d 985, 987 (2005). *** *Mandamus* will issue only where the plaintiff has fulfilled his burden (see *Mason v. Snyder*, 332 Ill. App. 3d 834, 840, 774 N.E.2d 457, 461 (2002)) to set forth *every* material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief. *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109, 682 N.E.2d 182, 186 (1997). A 'material fact' is one that 'is significant or essential to the issue or the matter at hand.' Black's Law Dictionary 611 (7th ed. 1999). Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged. *Beahringer v. Page*, 204 Ill. 2d 363, 369, 789 N.E.2d 1216, 1221 (2003)." (Emphasis in original.)

¶ 23                                  b. Dupree's Exercise-Yard Claim

¶ 24       Dupree contends that he stated a cause of action for *mandamus* relief by asserting that defendants acted unlawfully when they failed to restore his access to the prison's exercise yard. Citing section 504.670(a)(2) of title 20 of the Administrative Code, entitled "Recreation for Persons in Segregation Status," Dupree claims that he has a "right" to five hours of exercise yard time per week that defendants cannot transform into a privilege (20 Ill. Adm. Code 504.670(a)(2) (2011)). Thus, Dupree posits that the trial court's finding that defendants had discretionary authority to place restrictions on his access to the prison's exercise yard was erroneous. We disagree.

¶ 25       We first reject Dupree's claim that he had a "right" to access the prison's exercise yard. In *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258, 739 N.E.2d 897, 902 (2000), this court held that prison regulations, such as the Administrative Code, "were designed to provide guidance to prison officials in the administration of prisons" and "were *never* intended to confer rights on inmates or serve as a basis for constitutional claims." (Emphasis in original.) See also *McNeil v. Carter*, 318 Ill. App. 3d 939, 943, 742 N.E.2d 1277, 1281 (2001) (citing *Ashley* approvingly, for the proposition that a statute does not confer a private right on inmates). The

rationale for such a prohibition is to (1) prevent inmates–such as Dupree–from "[searching] through prison regulations and state statutes in search of mandatory language on which to base their purported 'rights' " and (2) extract courts from what essentially amounts to daily prison managerial decisions. *Ashley*, 316 Ill. App. 3d at 1259, 739 N.E.2d at 903.

¶ 26     We noted further the following regarding the constitutional rights inmates possess:

"The Constitution does not require that prisons be comfortable [citation], only that they supply basic human needs [citation]. Inmates thus have a constitutional right to adequate shelter, food, drinking water, clothing, sanitation, medical care, and personal safety. [Citations.] Prisoners also have a reasonable right of access to courts and a right to a reasonable opportunity to exercise religious freedom under the first amendment. [Citation.] Beyond these, prisoners possess no other rights, only privileges." *Ashley*, 316 Ill. App. 3d at 1258-59, 739 N.E.2d at 903.

¶ 27     We also reject Dupree's claim that defendants lacked the discretionary authority to place restrictions on his exercise-yard privileges. Section 504.670 of title 20 of the Administrative Code–which Dupree relies upon–also allows the temporary restriction or suspension of an inmate's recreation outside of the cell if it is determined that the inmate is a "threat to the safety and security of the facility or any person." 20 Ill. Adm. Code 504.670(b) (2011). Such circumstances include, but are not limited to, the following: (1) inmates who are segregated and under investigation (20 Ill. Adm. Code 504.670(b)(1)); (2) inmates who have medical or a mental health condition (20 Ill. Adm. Code 504.670(b)(2)); (3) inmates who have been witnesses in criminal cases against other inmates or require precautions to ensure their safety (20 Ill. Adm. Code 504.670(b)(3)); (4) inmates classified as high escape risks (20 Ill. Adm. Code 504.670(b)(4)); (5) inmates that commit certain crimes while segregated (20 Ill. Adm. Code 504.670(c)(1)); and (6) inmates who commit major rule or minor disciplinary infractions that are "yard-related" while the offender was in a segregation status (20 Ill. Adm. Code 504.670(c)(2), (c)(3)).

¶ 28     In his brief to this court, Dupree posits only–as he did in his May 2009 petition for writ of *mandamus*–that Mathy restricted his access to the exercise yard whenever he received an IDR although "the [IDR] has nothing to do with the yard" and that "nowhere in Title 20 of the [Administrative Code] is [Mathy] allowed to do so." However, without more, Dupree's claim fails to set forth *every* material fact required to demonstrate that he is entitled to *mandamus* relief. Therefore, we conclude that Dupree failed to state a cause of action in this regard.

¶ 29                              c. Dupree's IDR Claim

¶ 30     Dupree also contends that he stated a cause of action for *mandamus* relief by asserting that defendants acted unlawfully when they failed to remove all existing IDRs from his prison record because Walker failed to personally review and finalize each report. We disagree.

¶ 31     Section 504.805 of title 20 of the Administrative Code, which outlines the responsibilities a director or chief administrative officer has pertaining to discipline and grievances, provides as follows:

"a) Unless otherwise specified, the Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified.

b) No other individual may routinely perform duties whenever a Section in this Subpart specifically states the Director or Chief Administrative Officer shall *personally* perform the duties. However, the Director or Chief Administrative Officer may designate another person or persons to perform the duties during periods of his or her temporary absence or in an emergency." (Emphasis added.) 20 Ill. Adm. Code 504.805 (2011).

¶ 32    Section 504.850 of the Administrative Code, which pertains, in part, to an inmate's appeal of his grievance, states as follows:

"The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Adm. Code 504.850(f) (2011).

¶ 33    In support of his contention, Dupree relies on an April 2009 affidavit by Terry Anderson, DOC's chairperson for the Office of Inmate Issues, in which she states, in part, the following:

"Walker does not receive, review, or respond to inmate correspondences or grievance appeals. Instead, *** Walker's signature is affixed to responses to inmate correspondence and grievance appeals by various members of the [Administrative Review Board], including myself, who have the authority to review and sign on [Walker's] behalf as administrative designees."

¶ 34    Despite Dupree's reliance, Anderson's affidavit does not support his argument but, instead, merely advises him of what the preceding sections of the Administrative Code expressly allow–that is, that Walker can delegate the review of an inmate's grievance appeal because he is not required to *personally* review such appeals. Thus, we reject Dupree's contention that he stated a cause of action for *mandamus* relief in this regard.

¶ 35                          d. Dupree's Property Claim

¶ 36    Dupree also contends that he stated a cause of action for *mandamus* relief by asserting that defendants acted unlawfully when they failed to return his confiscated "legal and personal property" after Dupree had the relevant IDR expunged from his record. We disagree.

¶ 37    In support of his contention, Dupree appended an April 2009 Adjustment Committee Final Summary Report, which expunged an August 2008 IDR that documented Dupree's possession of "Contraband/Unauthorized Property." The IDR was expunged because the adjustment committee failed to comply with the following provisions of section 504.80(h)(5) of title 20 of the Administrative Code:

"At least one person who serves as an Adjustment Committee member shall hear the in-person testimony of the offender's witnesses where the offender makes a timely request for the witnesses or is granted a continuance to request witness testimony. In-person testimony of the offender's witnesses shall be defined as face-to-face contact or

-7-

telephonic contact by the Adjustment Committee." 20 Ill. Adm. Code 504.80(h)(5) (2011).

¶ 38 Despite his claim, Dupree did not allege material facts relating to the "legal and personal property" at issue, nor the circumstances under which defendants purportedly confiscated that property. Given that prison officials may establish regulations regarding the property inmates can retain in their cells (see *Ashley*, 316 Ill. App. 3d at 1256, 739 N.E.2d at 901 ("[P]rison officials may–as a condition of confinement–establish rules and regulations that limit the type and quantity of personal property that an inmate may keep in his prison cell, and such rules and regulations do not infringe upon the inmate's constitutional rights.")), Dupree has failed to set forth every material fact required to demonstrate that (1) he has a clear right to the relief requested, (2) a clear duty on the part of defendants to act, and (3) clear authority existed on the part of defendants to comply with an order granting *mandamus* relief. We thus conclude that Dupree failed to state a cause of action in this regard.

¶ 39 In so concluding, we also reject Dupree's claim that he was entitled to recover $527 in damages for his lost, stolen, and confiscated property. See *Behl v. Duffin*, 406 Ill. App. 3d 1084, 1092 (2010) (quoting *Hatch v. Szymanski*, 325 Ill. App. 3d 736, 741, 759 N.E.2d 585, 590 (2001) (" '[i]n a *mandamus* proceeding, damages are not allowed unless the trial court issues the writ' ")).

¶ 40        B. The Trial Court's Imposition of
            Filing Fees and Court Costs

¶ 41 Dupree next argues that the trial court erred by ordering him to pay filing fees and court costs associated with his petition for writ of *mandamus*. In particular, Dupree claims that the court's finding that his petition for writ of *mandamus* was frivolous because it lacked an arguable basis in either the law or fact was "plain error." We disagree.

¶ 42 Section 22-105(a) of the Civil Code provides, in part, the following:

> "(a) If a prisoner confined in an Illinois Department of Corrections facility files a pleading, motion, or other filing which purports to be a legal document in a case seeking *** action *** against *** the Illinois Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees and the Court makes a specific finding that the pleading, motion, or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs." 735 ILCS 5/22-105(a) (West 2008).

¶ 43 Because we have previously determined that the trial court did not err by dismissing Dupree's *mandamus* petition for failing to state a cause of action and similarly conclude that, based on that analysis, Dupree's contentions were frivolous, we also reject Dupree's claim that the court erred by imposing filing fees and court costs.

¶ 44                      C. The Trial Court's Dismissal of Dupree's
Request for a Declaratory Judgment

¶ 45       Dupree also argues that the trial court erred by denying his request for a declaratory judgment. We disagree.

¶ 46       A plaintiff is not entitled to declaratory relief unless (1) one party has a tangible interest, (2) the opposing party has an adverse interest, and (3) an actual controversy exists over the interest. *Beahringer v. Roberts*, 334 Ill. App. 3d 622, 626, 776 N.E.2d 247, 252 (2002). A plaintiff is entitled to injunctive relief if he establishes by a preponderance of the evidence that (1) he possesses a certain and clearly ascertainable right that needs protection, (2) he would suffer irreparable injury without protection of the injunction, (3) there is no adequate remedy at law for the injury, and (4) he is likely to prevail on the merits. *Beahringer*, 334 Ill. App. 3d at 626-27, 776 N.E.2d at 252.

¶ 47       In his October 2009 motion to supplement relief, Dupree's request for a declaratory judgment was comprised solely of the following sentence: "Issue an order/declaratory relief stating that the unlawful confiscation of my legal property [was] unconstitutional [and] a legal [hindrance]." However, as with his property claim contained within his petition for writ of *mandamus*, Dupree failed to establish that he was entitled to injunctive relief. Thus, the trial court properly denied Dupree's request for failure to state a cause of action for declaratory relief.

¶ 48                         D. Dupree's Remaining Claims

¶ 49       Dupree next argues that the trial court abused its discretion by (1) failing to appoint counsel to represent him and (2) failing to enter default judgment against defendants.

¶ 50                          1. *The Standard of Review*

¶ 51       A trial court's determination concerning whether to (1) appoint counsel and (2) grant or deny a motion for default judgment, will not be disturbed absent an abuse of the court's discretion. See *Doherty v. Caisley*, 104 Ill. 2d 72, 78, 470 N.E.2d 319, 322 (1984) (trial court does not have duty to but may, in its discretion, appoint the public defender to represent an inmate in civil matters concerning confinement); *Jackson v. Bailey*, 384 Ill. App. 3d 546, 548, 893 N.E.2d 280, 283 (2008) ("[w]hether to grant or deny a motion for [default judgment] is within the sound discretion of the trial court, and will not be reversed absent an abuse of discretion or a denial of substantial justice"). A trial court abuses its discretion "when it acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted." *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377, 753 N.E.2d 452, 461 (2001) (citing *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941, 719 N.E.2d 117, 121 (1999)).

¶ 52                      2. *Dupree's Appointment-of-Counsel Claim*

¶ 53       Dupree contends that the trial court abused its discretion by failing to appoint counsel to

represent him. We disagree.

¶ 54 　 As previously stated, *mandamus* is a civil remedy and as such, "[a] court has no duty to appoint counsel in a civil action." *Brewer v. Peters*, 262 Ill. App. 3d 610, 613, 633 N.E.2d 17, 19 (1994). Consequently, it is well established that an inmate does not have a constitutional right to the appointment of counsel in *mandamus* cases. *Doherty*, 104 Ill. 2d at 76, 470 N.E.2d at 321. Thus, we reject Dupree's claim that the trial court abused its discretion by not appointing counsel to represent him.

¶ 55 　　　　　　　　　　3. *Dupree's Default-Judgment Claim*

¶ 56 　 Dupree also contends that the trial court abused its discretion by failing to enter default judgment against defendants. We disagree.

¶ 57 　 A trial court may enter a judgment by default "for want of an appearance, or for failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought." 735 ILCS 5/2-1301(d) (West 2008). Although the court may enter a default judgment for want of an appearance, a default judgment is a drastic measure, not to be encouraged and to be employed only as a last resort. *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 573-74, 786 N.E.2d 227, 229 (2003). A trial court should deny a motion for default judgment when it results in the denial of substantial justice. *Donahue*, 337 Ill. App. 3d at 574, 786 N.E.2d at 229.

¶ 58 　 In this case, Dupree claims that he was denied substantial justice. In particular, Dupree claims that he was prejudiced by the trial court's failure to grant his August 2009 and January 2010 motions for default judgment because defendants were "given a second bite at the apple" and, as a result, his *mandamus* claims were later denied in violation of section 2-1301(d) of the Civil Code.

¶ 59 　 Here, the record shows that defendant initially complied with the trial court's August 2009 order by filing an October 2009 motion to dismiss on Walker's behalf prior to the court's November 2009 review hearing. The record also shows that shortly after discovering a clerical error that showed Hardy and Mathy had been served with Dupree's petition, the Attorney General quickly requested leave to add them as parties, alleging the same defect in their motion to dismiss as Walker alleged in his motion. Thus, contrary to Dupree's claim, the record does not show that defendants' actions prejudiced him. More important, given that Illinois public policy prefers to decide legal issues on their merits, we reject Dupree's claim that the court abused its discretion by denying his motions for default judgment. See *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 665, 891 N.E.2d 1, 22 (2007) (Illinois public policy prefers to decide cases on their merits instead of dismissing them purely on procedural grounds.).

¶ 60 　　　　　　　　　　　　III. CONCLUSION

¶ 61 　 For the reasons stated, we affirm the trial court's judgment.

¶ 62 　 Affirmed.