# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Montes v. Taylor*, 2013 IL App (4th) 120082

---

| | |
|---|---|
| Appellate Court Caption | ELLIOT A. MONTES, Plaintiff-Appellant, v. GLADYSE TAYLOR, Individually; S.A. GODINEZ, in His Capacity as Director of The Department of Corrections; and MARCUS HARDY, Individually and as Warden of the Stateville Correctional Center, Defendants-Appellees, and RANDY PFISTER, Assistant Warden of Operations at the Stateville Correctional Center; Unknown Persons Acting on Behalf of THE DEPARTMENT OF CORRECTIONS; and Unknown Persons Acting on Behalf of STATEVILLE CORRECTIONAL CENTER, Defendants. |
| District & No. | Fourth District<br>Docket No. 4-12-0082 |
| Filed | March 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of an inmate's petition seeking the restoration of his visitation privileges with respect to one individual after he was found to have a cellular telephone in his possession was upheld, since no violation of his visitation privileges was established. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No.11-MR-39; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Elliot Montes, of Pontiac, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Elliot A. Montes, an inmate in the Illinois Department of Corrections (DOC), filed a petition seeking restoration of visitation privileges against defendants, Gladyse Taylor, individually; S.A. Godinez, DOC's Director; Marcus Hardy, individually and as warden of Stateville Correctional Center (Stateville); Randy Pfister, Stateville's assistant warden; and unknown persons acting on behalf of both DOC and Stateville. On the motion of defendants Taylor and Hardy, the trial court dismissed plaintiff's petition and he appeals. We affirm.

¶ 2                              I. BACKGROUND

¶ 3     On April 1, 2011, plaintiff filed a *pro se* "petition for deprivation of rights," complaining his due process rights were violated by defendants' denial of visitation privileges with respect to one particular visitor, Barbara Brown. He asserted Brown was permanently restricted from visiting him after prison officials discovered a cellular phone in plaintiff's possession. Plaintiff argued he had a liberty interest in visitation that required he receive due process when that interest was restricted. He maintained his due process rights were violated because Brown's restriction was arbitrary and unsupported by any evidence connecting his misconduct in possessing electronic contraband with an abuse of the visiting process. Plaintiff cited to section 2-701 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-701 (West 2010)) regarding declaratory judgment actions and requested a court order requiring defendants to "comply with and obey such laws, statutes, rules, directives[,] and regulations" governing a prisoner's right to receive visitation, as well as restoration of Brown's visitations privileges.

¶ 4     Documents attached to plaintiff's petition showed, on April 14, 2010, while imprisoned in DOC, he was found in possession of a cellular phone, and an adapter and cords used for charging the phone. He was issued a disciplinary ticket and, upon admitting that the offending materials belonged to him, found guilty of possessing electronic contraband,

-2-

impeding or interfering with an investigation, and possessing contraband or unauthorized property. Following the April 2010 incident, Brown was placed on DOC's temporary visitor restriction list for "suspicion of bringing contraband into [a DOC] facility." Ultimately, she was placed on a permanent restriction list. Documents further show plaintiff filed grievances, seeking to have Brown taken off restriction. Although plaintiff initially refused to provide information regarding how he received the cellular phone, his grievances alleged the phone was obtained from a correctional officer rather than Brown and that his last visit from Brown occurred two weeks prior to when the electronic contraband was discovered.

¶ 5    On August 18, 2011, defendants Taylor and Hardy filed a motion to dismiss pursuant to section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2010)). Based on plaintiff's requested relief, defendants treated his filing as a petition for *mandamus* relief. They asserted no violation of plaintiff's due process rights had occurred and argued he failed to allege facts sufficient to entitle him to *mandamus* relief.

¶ 6    On January 4, 2012, the trial court granted defendants' motion to dismiss. It stated as follows:

"Plaintiff references the [Civil Code] under [section 2-]701 which involves a declaratory judgment claim. Plaintiff has failed to set for [*sic*] the proper elements for a declaratory judgment. Moreover, as noted in the motion to dismiss, visitation privileges are discretionary. Therefore, they would not be subject to mandamus."

The court also noted only defendants Taylor and Hardy had been properly served. It ordered all other defendants stricken for failure to prosecute.

¶ 7    This appeal followed.


¶ 8                               II. ANALYSIS

¶ 9    On appeal, plaintiff argues the trial court erred in granting defendants' motion to dismiss. He maintains he had a liberty interest in visitation, visitation could not be terminated without adherence to due process, and his due process rights were violated because Brown's permanent restriction was arbitrary and not based on misconduct that could be connected to an abuse of the visitation process.

¶ 10    "A section 2-615 motion to dismiss tests the legal sufficiency of a complaint." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31, 976 N.E.2d 318. "Under section 2-615, the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16, 973 N.E.2d 880. A dismissal pursuant to that section is subject to *de novo* review. *Patrick Engineering*, 2012 IL 113148, ¶ 31, 976 N.E.2d 318.

¶ 11    Initially on appeal, defendants argue plaintiff's petition was subject to dismissal for his failure to show exhaustion of his administrative remedies. They argue plaintiff's filings show he filed two grievances regarding the visitation issue but failed to show he pursued those grievances any further.

¶ 12    "A party aggrieved by an administrative decision cannot seek judicial review unless he

has first pursued all available administrative remedies" and "[t]he doctrine of exhaustion of administrative remedies applies to grievances filed by inmates." *Ford v. Walker*, 377 Ill. App. 3d 1120, 1124, 888 N.E.2d 123, 126-27 (2007). Where an inmate fails to show his grievance had administrative finality, he does not meet his burden of showing exhaustion of administrative remedies. *Ford*, 377 Ill. App. 3d at 1124, 888 N.E.2d at 127.

¶ 13     Plaintiff attached documentation to his petition that showed he filed two grievances complaining about Brown's visitation restriction. However, the record fails to reflect resolution of those grievances. As a result, plaintiff has failed to show administrative finality and exhaustion of his administrative remedies. Although the trial court dismissed plaintiff's complaint for other reasons, a reviewing court may affirm on any basis warranted by the record. See *Reyes v. Walker*, 358 Ill. App. 3d 1122, 1124, 833 N.E.2d 379, 381 (2005). Here, plaintiff failed to exhaust administrative remedies and dismissal of his petition was warranted on that basis.

¶ 14     Dismissal of plaintiff's petition was also appropriate under section 2-615 for failure to state a cause of action upon which relief may be granted. Specifically, as the trial court found, plaintiff failed to state a claim for either *mandamus* or declaratory relief.

¶ 15     Plaintiff sought a court order requiring defendants "to immediately obey the laws, statutes, rules, directives[,] and regulations" which govern his rights and to restore Brown's visitation privileges. "*Mandamus* is an extraordinary remedy used to compel a public official to perform a purely ministerial duty where no exercise of discretion is involved." *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 38, 944 N.E.2d 337, 341 (2011). "[A]n inmate's claim of a due-process-rights violation can also state a cause of action for *mandamus*." *Knox v. Godinez*, 2012 IL App (4th) 110325, ¶ 16, 966 N.E.2d 1233.

¶ 16     When seeking *mandamus* relief, a petitioner must establish "a clear right to the relief requested, a clear duty of the public official to act, and clear authority in the public official to comply with the writ." *Alvarez*, 241 Ill. 2d at 39, 944 N.E.2d at 341. "A plaintiff must set forth every material fact necessary to show he or she is entitled to a writ of *mandamus*, and the plaintiff bears the burden to establish a clear, legal right to it." *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004). "Where the performance of an official duty or act involves the exercise of judgment or discretion, the officer's action is not subject to review or control by *mandamus*." *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981).

¶ 17     In his petition, plaintiff also cited section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2010)) regarding declaratory judgment actions. "[T]o state a cause of action for declaratory judgment, the plaintiff must assert the following: ' "(1) that he has a tangible legal interest with regard to the claim, (2) that the defendant's conduct is opposed to that interest, and (3) that there is an ongoing controversy between the parties that is likely to be prevented or resolved if the court decides the case." ' " *Knox*, 2012 IL App (4th) 110325, ¶ 18, 966 N.E.2d 1233 (quoting *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 21, 952 N.E.2d 170, quoting *Young v. Mory*, 294 Ill App. 3d 839, 845, 690 N.E.2d 1040, 1044 (1998)).

¶ 18     As stated, plaintiff argues he had a liberty interest in visitation which gave rise to due

process protections. The Supreme Court has held that "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' [citation], and therefore is not independently protected by the Due Process Clause." *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461 (1989), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Although under certain circumstances, the state may create protected liberty interests, such interests "will be generally limited to freedom from restraint which *** imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.

¶ 19    Plaintiff argues Illinois created a protected liberty interest in visitation through section 3-7-2(f) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-7-2(f) (West 2008)). That section provides as follows:

   "All of the institutions and facilities of the Department shall permit every committed person to receive visitors, except in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility." 730 ILCS 5/3-7-2(f) (West 2008).

"The plain language of section 3-7-2(f) does not grant unrestricted visitation; it merely allows inmates to receive visitors, and even then just to the extent it does not hinder the safety or security of the institution or facility." *Parker v. Snyder*, 352 Ill. App. 3d 886, 889, 817 N.E.2d 126, 128 (2004). Additionally, the Illinois Administrative Code provides that the chief administrative officer "may deny, suspend, or restrict visiting privileges" for a variety of reasons, including security and safety requirements, space availability, disruptive conduct, abuse of visiting privileges, and violations of state and federal laws or departmental rules. 20 Ill. Adm. Code 525.60(e) (2013). "If contraband is discovered in the possession of an offender either during or after a visit, it will be assumed that the contraband was introduced by the offender's visitor." 20 Ill. Adm. Code 525.60(i) (2013). "The Chief Administrative Officer may restore visiting privileges at any time." 20 Ill. Adm. Code 525.60(m) (2013).

¶ 20    We disagree with plaintiff's position and find no state-created liberty interest in visitation arising from section 3-7-2(f). In *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258, 739 N.E.2d 897, 902 (2000), this court previously noted that the Unified Code was "designed to provide guidance to prison officials in the administration of prisons" and stated "Illinois law creates no more *rights* for inmates than those which are constitutionally required." (Emphasis in original.) In that case, we emphasized the Supreme Court's holding that "states may create liberty interests which are protected by the due process clause *only* when state law 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " (Emphasis in original.) *Ashley*, 316 Ill. App. 3d at 1258, 739 N.E.2d at 902 (quoting *Sandin*, 515 U.S. at 484). Further, we stated as follows:

   "The Constitution does not require that prisons be comfortable [citation], only that they supply basic human needs [citation]. Inmates thus have a constitutional right to adequate shelter, food, drinking water, clothing, sanitation, medical care, and personal safety. [Citations.] Prisoners also have a reasonable right of access to courts and a right

to a reasonable opportunity to exercise religious freedom under the first amendment. [Citation.] Beyond these, prisoners possess no other rights, only privileges." *Ashley*, 316 Ill. App. 3d at 1258-59, 739 N.E.2d at 903.

¶ 21    Plaintiff cites various federal district court decisions to support his position that, through section 3-7-2(f), the State created a liberty interest in visitation. First, federal district court decisions may provide guidance and act as persuasive authority but this court is not bound to follow those decisions. *Lucas*, 349 Ill. App. 3d at 1002, 812 N.E.2d at 78. Second, as defendants point out, several of the cases plaintiff relies upon are irrelevant to, or distinguishable from, the issues presented in this case. Third, and most important, plaintiff relies on decisions that were based upon an outdated method for determining whether a state has created a protected liberty interest that requires due process protection.

¶ 22    In *Williams v. Schomig*, No. 96-C-2029, 1997 WL 280703, at *2 (N.D. Ill. May 21, 1997), the United States District Court for the Northern District of Illinois recognized the change in methodology, stating as follows:

"While a number of courts in this district have found that Illinois inmates may have a protected liberty interest in visitation privileges, these decisions all pre-date the Supreme Court holding in *Sandin v. Conner*, 515 U.S. 472 ***. [Citations.]

In *Sandin*, the Court clarified the method for determining whether a state has created a protected liberty interest entitling a prisoner to the procedural due process protections of the Due Process Clause. No longer are courts required to examine prison regulations to determine whether they place substantive restrictions on an official's discretion; rather, the court's analysis must focus on the alleged deprivation and the appropriate concern is whether it falls 'within the normal limits or range of custody which the conviction has authorized the state to impose.' [Citation.] The Court held that convicted inmates have a liberty interest, and are entitled to Due Process protections *** only where their treatment by prison officials 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' [Citation.]"

The court went on to hold that "[w]hen compared with the ordinary incidents of prison life, the restriction of visitation privileges for one, non-family individual is not atypical or significant and does not implicate a liberty interest." *Williams*, 1997 WL 280703, at *3; see also *Murphy v. Hardy*, No. 12-C-7621, 2012 WL 5520863, at *3 (N.D. Ill. Nov. 13, 2012) ("Restrictions on prison visitations, especially those imposed due to safety and security, do not constitute an atypical and significant deprivation to the normal incidents of prison life."). We note this court has similarly recognized *Sandin*'s "abandonment of the liberty-interest methodology" previously established in *Hewitt v. Helms*, 459 U.S. 460 (1983), noting "[t]he *Hewitt* approach had led courts to inject themselves deeply in the day-to-day management of prisons and to second-guess essentially prison managerial decisions." *Arnett v. Snyder*, 331 Ill. App. 3d 518, 527-28, 769 N.E.2d 943, 951 (2001) (citing *Ashley*, 316 Ill. App. 3d at 1259, 739 N.E.2d at 903).

¶ 23    Here, the cases plaintiff cites are inapplicable as they rely on an outdated method for determining the existence of a state-created liberty interest. More recent federal district court decisions are based upon the appropriate standard and find no state-created liberty interest

in inmate visitation. We agree with these more recent decisions. See *Williams*, 1997 WL 280703; *Murphy*, 2012 WL 5520863.

¶ 24　　Finally, we note plaintiff cites *Jackson v. Peters*, 251 Ill. App. 3d 865, 867, 623 N.E.2d 839, 841 (1993), wherein the Third District determined section 3-7-2(f) created "a general due process right for inmates to receive visitors." There, the court noted the statute also imposed reasonable limitations upon that right and "[o]ne of the limitations is that the right can be suspended if an abuse of the visitation privilege occurs." *Jackson*, 251 Ill. App. 3d at 867, 623 N.E.2d at 841. The court concluded prison officials had authority to suspend visitation rights in that case without violating due process because the visitor abused visitation privileges by bringing contraband into the prison. *Jackson*, 251 Ill. App. 3d at 867, 623 N.E.2d at 841.

¶ 25　　We agree with the Third District's ultimate holding in *Jackson*; however, to the extent it stands for the proposition that the Unified Code creates a liberty interest in visitation and requires due process protection, we disagree. This court is "not bound to follow the decisions of other districts of the state appellate court." *City of Champaign v. Torres*, 346 Ill. App. 3d 214, 219, 803 N.E.2d 971, 975 (2004). In *Jackson*, the court provided no basis for its finding that the Unified Code created "a general due process right" for inmate visitation. Further, its decision also predated *Sandin*.

¶ 26　　Relying on *Sandin* and this court's own previous decisions, we find Illinois has not created a protected liberty interest in inmate visitation through section 3-7-2(f) of the Unified Code. In this case, plaintiff alleged only a restriction on his visitation with respect to one individual, Brown, and Brown's permanent restriction occurred after she had visited plaintiff and plaintiff was found in possession of electronic contraband. The State has a legitimate interest in maintaining security and safety in a prison setting. Visitor restrictions like the one in this case concern only "the routine deprivations and discomforts of prison life" for the purpose of maintaining prison safety and security and do not amount to an "atypical and significant hardship." See *Ashley*, 316 Ill. App. 3d at 1258, 739 N.E.2d at 903 (quoting *Sandin*, 515 U.S. at 484). Plaintiff has failed to state a claim upon which relief could be granted.

¶ 27　　Also, not only has plaintiff failed to establish a due process violation in the restriction of visitation privileges, he is not entitled to *mandamus* relief to compel acts which involve the exercise of discretion. Prison officials exercise discretion regarding the inmate visitation process and their decisions are not subject to *mandamus*. The trial court committed no error in dismissing plaintiff's petition.

¶ 28　　　　　　　　　　　　III. CONCLUSION

¶ 29　　For the reasons stated, we affirm the trial court's judgment.

¶ 30　　Affirmed.