# Illinois Official Reports

## Appellate Court

---

### *Cebertowicz v. Baldwin*, 2017 IL App (4th) 160535

---

| | |
|---|---|
| Appellate Court Caption | KENNETH H. CEBERTOWICZ, Plaintiff-Appellant, v. JOHN BALDWIN and JARED BRUNK, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-16-0535 |
| Filed<br>Modified upon<br>denial of rehearing | October 2, 2017<br><br>November 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 14-MR-389; the Hon. John M. Madonia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kenneth H. Cebertowicz, of Robinson, appellant *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Honor K. Moore, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Harris and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Kenneth H. Cebertowicz, an inmate in the Illinois Department of Corrections (Department), seeks an order of *mandamus* against defendants, John Baldwin, the Department's director, and Jared Brunk, the Department's chief financial officer, to compel their compliance with section 430.40(a) of the Department's rules, a section relating to photocopy fees (20 Ill. Adm. Code 430.40(a) (1984)). (Actually, instead of Baldwin, plaintiff sued then-director Salvadore A. Godinez, but Baldwin has been automatically substituted for Godinez. See 735 ILCS 5/14-107 (West 2016).) The parties filed cross-motions for summary judgment. The trial court denied plaintiff's motion and granted defendants' motion. Plaintiff appeals. In our *de novo* review (see *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010)), we affirm the trial court's judgment because, given the admitted facts, plaintiff suffered no prejudice from the Department's alleged violation of section 430.40(a).

¶ 2                                            I. BACKGROUND

¶ 3    On February 2, 2014, while he was confined in Lawrence Correctional Center, Sumner, Illinois, plaintiff filed a grievance. (According to the Department's website, of which we may take judicial notice (*People v. Mitchell*, 403 Ill. App. 3d 707, 709 (2010)), plaintiff now is confined in Robinson Correctional Center, Robinson, Illinois.) His grievance pertained to the increased rates that Lawrence Correctional Center had begun charging for making photocopies in its law library. Previously, his inmate account was charged only 5 cents per photocopy. In November 2013, however, the rate doubled to 10 cents per one-sided photocopy and 20 cents per two-sided photocopy. He asked the law librarian, Kim Ulrich, the reason for the increase. She replied that the decision to increase the photocopy rate had come from the Department's headquarters, in Springfield, Illinois.

¶ 4    On October 11, 2013, Brunk sent a memorandum, from 1301 Concordia Court, Springfield, to "All Business Administrators" in the Department. The memorandum was titled "Copying Fees," and it directed as follows:

> "Please be advised that effective November 1, 2013[,] all inmates are to be charged library copying fees of $0.10 per one-sided and $0.20 per double-sided documents. Revenue from these transactions shall be deposited into the 523 Fund within 10 working days of the following month. If there are any questions/concerns, please feel free to contact my office. Thank you."

¶ 5    Accordingly, on October 15, 2013, Marc Hodge, the chief administrative officer of Lawrence Correctional Center, issued "Warden's Bulletin 13-141" to "All Inmates" and "All Staff." The bulletin announced that, "[e]ffective [November 1, 2013], all inmates will be charged library copying fees of $0.10 per one-sided copy and $0.20 per double-sided documents."

¶ 6    In his grievance, which he filed directly with the administrative review board on February 2, 2014, plaintiff argued that this rate increase was calculated to generate a profit from inmates and not merely to recoup the Department's actual photocopying costs. To prove the alleged profit motive, he presented information he had obtained through requests pursuant to the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2014)). He had found out that a ream of 500 sheets of paper cost the Department only $2.94, which amounted to about half a cent

(0.0058 of a cent) per sheet. Another document, from the Department's contracting division, specifically stated it cost only 0.0025 of a cent per photocopy to use the photocopiers, which the Department rented. Adding those two numbers together (0.0058 + 0.0025), plaintiff concluded that the actual cost to Lawrence Correctional Center of a single photocopy was approximately 0.75 of a cent, compared to the 10 cents that Brunk had directed all facilities to begin charging. Plaintiff explained all this in the grievance form, in the space provided for the "Brief Summary of [the] Grievance."

¶ 7 Underneath that explanation was an area labeled "Counselor's Response (if applicable)." That area of the grievance form was blank.

¶ 8 On March 19, 2014, Sarah Johnson of the Department's administrative review board returned the grievance to plaintiff, along with an explanatory form titled "Return of Grievance or Correspondence." This form had an area labeled "Misdirected," and within that area the box next to the preprinted language "Contact your correctional counselor regarding this issue" was unchecked. Further down, toward the middle of the form, was an area labeled "Additional information required," and within that area the box likewise was unchecked next to the preprinted language "Provide a copy of the response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal." Finally, in the bottom third of the form was an area labeled "No further redress," and within that area a box was checked next to the preprinted language "Not submitted in the timeframe outlined in Department Rule 504 [(20 Ill. Adm. Code 504)]; therefore, this issue will not be addressed further."

¶ 9 In his complaint (or petition) for *mandamus*, and in his motion for summary judgment, plaintiff argued that the new photocopying rate, dictated from Springfield headquarters to all the Department's facilities, violated section 3-4-3 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-4-3 (West 2014)) and section 430.40 of the Department's rules (20 Ill. Adm. Code 430.40 (1984)) by "requir[ing] each institution to charge a standard fee per copy regardless of what an individual institution's [*sic*] actually pays per copy."

¶ 10 Defendants moved for summary judgment on five grounds. First, they argued that plaintiff lacked standing, and, in support of that argument, they cited *Jackson v. Randle*, 2011 IL App (4th) 100790, ¶ 14, *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶¶ 24-28, and *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258 (2000). Second, they argued that because plaintiff submitted his grievance after the expiration of the 60-day deadline in section 504.810(a) of the Department's rules (20 Ill. Adm. Code 504.810(a) (2017)), he had failed to exhaust his administrative remedies. Third, they argued that the director lacked the duty and authority to grant the requested relief. Fourth, they argued that section 3-4-3 had nothing to do with photocopying costs. Fifth, they argued that they already were in compliance with section 430.40 because "Defendant Brunk [had] determined that, across facilities, the actual cost per copy worked out to 10 cents per single-sided page and 20 cents per double-sided page," and, "[t]herefore, Defendant Brunk [had] standardized copy fees to reflect actual cost per copy."

¶ 11 In a docket entry dated June 20, 2016, the trial court granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment. The court based those rulings solely on the lack of standing:

"The Court finds, based upon the holdings in Jackson v. Randle, 2011 IL App (4th) 100790[,] and Ashley v. Snyder, 316 Ill. App. 3d 1252 (2000)[,] that the [Unified] Code *** and corresponding Department Rules were designed to provide guidance to

prison officials in the administration of prisons, not to create more rights for inmates than those that are constitutionally required. In reliance on these holdings, the Court rules that the Unified Code and the Departmental Rules do not convey a private right of action for Plaintiff to bring this Complaint ***."

¶ 12   This appeal followed.

¶ 13                                   II. ANALYSIS

¶ 14                               A. Plaintiff's Standing

¶ 15   In *Jackson*, 2011 IL App (4th) 100790, ¶¶ 1-2, a prisoner accused the Department and certain of its officers of violating section 3-7-2a of the Unified Code (730 ILCS 5/3-7-2a (West 2008)) by overcharging him for commissary items. He sought declaratory and injunctive relief, as well as compensatory damages. *Id.* ¶ 5. The defendants challenged his standing. *Id.* ¶ 14. We concluded he lacked standing. *Id.* ¶ 16. We reasoned as follows:

"Generally, the doctrine of standing is designed to 'preclude persons who have no interest in a controversy from bringing suit.' *Glisson* [*v. City of Marion*], 188 Ill. 2d [211,] 221, 720 N.E.2d [1034,] 1039 [(1999)]. However, the doctrine of standing also precludes a plaintiff from bringing a private cause of action based on a statute unless the statute expressly confers standing on an individual or class to do so. See *Glisson*, 188 Ill. 2d at 222, 720 N.E.2d at 1040 (rejecting the plaintiff's attempt to expand the doctrine of standing to include 'member[s] of [a] class designed to be protected by the statute, or one for whose benefit the statute was enacted, and to whom a duty of compliance is owed').

***

Here, [the plaintiff] sued [the] defendants, claiming that [the Department], through its commissary, had been overcharging him and other inmates in violation of section 3-7-2a of the Unified Code (730 ILCS 5/3-7-2a (West 2008)), which, as we previously explained, outlines the additional percentage amount a prison may charge above its cost for items sold at its commissary. Section 3-7-2a, however, does not expressly confer standing on inmates—or anyone else, for that matter—to enforce the cost percentages outlined therein." *Id.* ¶¶ 14, 16.

¶ 16   Although, in *Ruhl v. Department of Corrections*, 2015 IL App (3d) 130728, ¶ 25, the appellate court "[found] no reason to deviate from the holding of *Jackson*," plaintiff points out a reason for doing so: we misread *Glisson*. We agree with him that our analysis of standing, in the above-quoted passage from *Jackson*, was based on a misreading of *Glisson*.

¶ 17   In our parenthetical summary of the cited page from *Glisson*, we said that the supreme court had "reject[ed] the plaintiff's attempt to expand the doctrine of standing to include 'member[s] of [a] class designed to be protected by the statute, or one for whose benefit the statute was enacted, and to whom a duty of compliance [was] owed.' " *Jackson*, 2011 IL App (4th) 100790, ¶ 14 (quoting *Glisson*, 188 Ill. 2d at 222). That was an incorrect account of *Glisson*. Actually, it was the *defendants* in *Glisson* who wanted to *narrow* the doctrine of standing by subjecting the plaintiff to the test for standing set forth in *Lynch v. Devine*, 45 Ill. App. 3d 743, 748 (1977). *Glisson*, 188 Ill. 2d at 222. "The *Lynch* test provide[d] that, where the suit allege[d] injury due to violation of a statute, the doctrine of standing require[d] that the plaintiff be a member of the class designed to be protected by the statute, or one for whose

benefit the statute was enacted, and to whom a duty of compliance [was] owed." *Glisson*, 188 Ill. 2d at 222. The defendants in *Glisson* wanted to subject the plaintiff to the test in *Lynch* so as to negate his standing, as a private citizen, to enforce the Illinois Endangered Species Protection Act (520 ILCS 10/1 *et seq.* (West 1998)). *Glisson*, 188 Ill. 2d at 222. As it turned out, the supreme court concluded that the plaintiff lacked standing, despite its rejection of the test in *Lynch*. *Id.* at 231. But the important point, for our purposes, is that the supreme court in *Glisson* specifically rejected the zone-of-interests test for standing that the appellate court had adopted in *Lynch*. *Id.* at 222.

¶ 18     The test for standing in *Jackson* is a variation of the rejected test in *Lynch*. *Jackson* says: "[T]he doctrine of standing *** precludes a plaintiff from bringing a private cause of action based on a statute unless the statute expressly confers standing on an individual or class to do so." *Jackson*, 2011 IL App (4th) 100790, ¶ 14. Thus, under *Jackson*, not only must the plaintiff be "a member of the class designed to be protected by the statute *** and to whom a duty of compliance is owed" (*Glisson*, 188 Ill. 2d at 222), but the statute has to expressly state that the plaintiff or the class to which the plaintiff belongs has the right to bring suit to enforce the statute (*Jackson*, 2011 IL App (4th) 100790, ¶ 14). It is *Lynch* plus. It is a narrower, more demanding version of the zone-of-interests test.

¶ 19     The problem with *Lynch*—and, for that matter, with *Jackson*—is that it engrafted an "additional requirement" onto the traditional test for standing. *Glisson*, 188 Ill. 2d at 222. The supreme court reiterated in *Glisson* that the traditional test for standing was still the only test:

         "This court has set forth the general principle that standing requires some injury in fact to a legally cognizable interest in *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. [Citation.]" *Id.* at 221.

¶ 20     There are no add-ons to this traditional test for standing. See *id.* at 221-22. Thus, we decline to follow *Jackson* insofar as it holds that for a plaintiff to "[bring] a private cause of action based on a statute," the statute must "expressly [confer] standing on an individual or class to do so." *Jackson*, 2011 IL App (4th) 100790, ¶ 14. Instead, the long-standing rule is that the plaintiff in a *mandamus* action need have only an interest in the subject matter of the petition. *People ex rel. Peace v. Taylor*, 342 Ill. 88, 98 (1930); *Warden v. Byrne*, 102 Ill. App. 3d 501, 506 (1981). *Glisson* and *Greer* elaborate the nature of that required interest. Plaintiff has such an interest because he makes photocopies, for which his inmate account is charged.

¶ 21                    B. The Exhaustion of Administrative Remedies

¶ 22     The "Grievance Procedures For Offenders" are in part 504, subpart F, of the Department's rules (20 Ill. Adm. Code 504.Subpart F). Under these codified procedures, if the offender has a grievance, he or she must write it on a form that is to be available in all living units. 20 Ill. Adm. Code 504.810(a) (2017). If the grievance concerns discipline or sexual abuse, the offender must file the grievance directly with the grievance officer; otherwise, the offender must file it with the institutional counselor. *Id.*

¶ 23     The deadline for filing a grievance is "within 60 days after the discovery of the incident, occurrence[,] or problem that [gave] rise to the grievance." *Id.* This 60-day deadline will be

excused, however, if the grievance relates to allegations of sexual abuse or if the offender can show good cause for missing the deadline. *Id.*

¶ 24 Unexcused lateness in filing a grievance puts the grievance in the "[n]o[-]merit" category. 20 Ill. Adm. Code 504.830(a)(1) (2017). A no-merit grievance "may be returned as denied to the sender without further investigation." 20 Ill. Adm. Code 504.830(a) (2017).

¶ 25 Unless the grievance is in the no-merit category, the grievance officer will consider the grievance and communicate his or her findings and recommendations, in writing, to the chief administrative officer of the facility. 20 Ill. Adm. Code 504.830(e) (2017). The chief administrative officer then will review the grievance officer's findings and recommendations and will inform the offender of his or her decision, in writing. *Id.*

¶ 26 If, after receiving the chief administrative officer's decision, the offender still is dissatisfied with the resolution of the grievance, he or she may appeal to the Department's director. 20 Ill. Adm. Code 504.850(a) (2017). The appeal must be received by the administrative review board within 30 days after the date of the chief administrative officer's decision, and copies of the grievance officer's report and the chief administrative officer's decision should be attached. *Id.* The administrative review board will submit to the director a written report of its findings and recommendations. 20 Ill. Adm. Code 504.850(d) (2017). After reviewing those findings and recommendations, the director will make a final determination on the grievance and will send the offender a copy of the decision. 20 Ill. Adm. Code 504.850(e) (2017).

¶ 27 In making this final determination, the director typically will have the benefit of findings and recommendations from both the grievance officer and the administrative review board. Sometimes, however, the grievance officer can be bypassed:

"a) Offenders shall submit grievances directly to the Administrative Review Board when grieving:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 Ill. Adm. Code 504.870(a) (2017).

¶ 28 Defendants argue that because none of those four exceptions in section 504.870(a) apply to the present case, plaintiff was required to file his grievance first with his institutional counselor and then with the grievance officer. See 20 Ill. Adm. Code 504.810(a) (2017). Because plaintiff bypassed the institutional counselor and the grievance officer and filed his complaint directly with the administrative review board, defendants maintain that he failed to exhaust his administrative remedies. They cite our decision in *Montes v. Taylor*, 2013 IL App (4th) 120082, ¶ 12, in which we held: "A party aggrieved by an administrative decision cannot seek judicial review unless he has first pursued all available administrative remedies[,] and [t]he doctrine of exhaustion of administrative remedies applies to grievances filed by inmates." (Internal quotation marks omitted.)

¶ 29   Before addressing this particular argument by defendants, we should be clear as to what defendants do *not* argue under the heading of exhaustion of administrative remedies. Although the administrative review board rejected plaintiff's grievance on the ground that he had filed it more than 60 days after the issuance of the warden's bulletin (see 20 Ill. Adm. Code 504.810(a) (2017)), defendants do *not* argue, in this appeal, that plaintiff missed the 60-day deadline and that he failed to exhaust administrative remedies in *that* way. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived," *i.e.*, forfeited); Ill. S. Ct. R. 341(i) (eff. Jan. 1, 2016) (Rule 341(h)(7) applies to the appellee's brief); *People v. Betance-Lopez*, 2015 IL App (2d) 130521, ¶ 59 (so interpreting Rule 341(i)). Thus, the federal cases that defendants cite, in which prisoners filed an untimely grievance or administrative appeal, are inapposite. See *Woodford v. Ngo*, 548 U.S. 81, 87 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

¶ 30   It would be understandable to shy away from the untimeliness theory, considering that the grievable event was getting charged the higher rate, not the mere issuance of the warden's bulletin. Otherwise, within 60 days after the issuance of the bulletin, the tens of thousands of inmates in the Department's custody all would have had to file a grievance, regardless of whether they actually had used a departmental photocopier and had been charged the higher rate. Maybe to avoid that implausible position, defendants raise a different procedural objection to plaintiff's grievance, an objection the Department explicitly refrained from raising in its "Return of Grievance or Correspondence." Defendants object to the bypassing of the institutional counselor, the grievance counselor, and the chief administrative officer.

¶ 31   Because the purported nonexhaustion was the bypassing of lower levels of administrative scrutiny before the Department issued its final administrative decision, *Montes* and the other Illinois cases that defendants cite, *Duane v. Hardy*, 2012 IL App (3d) 110845, and *Reyes v. Walker*, 358 Ill. App. 3d 1122 (2005), really are not on point. In *Montes*, "the record fail[ed] to reflect resolution of [the plaintiff's] grievances" (*Montes*, 2013 IL App (4th) 120082, ¶ 13), and "[w]here an inmate fail[ed] to show his grievance had administrative finality, he [did] not meet his burden of showing exhaustion of administrative remedies" (*id.* ¶ 12). Likewise, in *Reyes*, "[t]he record [did] not indicate that the prison administrator had the chance to resolve [the] plaintiff's contentions of error." *Reyes*, 358 Ill. App. 3d at 1125. "Despite [the] plaintiff's statement that his grievances had administrative finality, we ha[d] nothing to indicate that was in fact the case." *Id.* Thus, the plaintiff had "failed to meet his burden of proving that he [had] exhausted his administrative remedies." *Id.* at 1125-26. In *Duane*, the record failed to show administrative finality, but we nevertheless considered the merits of the appeal anyway, holding that the plaintiff "ha[d] satisfied the exhaustion requirements by indicating the grievance process he pursued and the lack of response from [the Department]." *Duane*, 2012 IL App (3d) 110845, ¶ 9.

¶ 32   In the present case, by contrast, the record "show[s] [that the] grievance ha[s] administrative finality." *Montes*, 2013 IL App (4th) 120082, ¶ 12. Instead of requiring plaintiff to "[c]ontact [his] correctional counselor regarding this issue" or to "[p]rovide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response," the Department believed it had received "a fair and full opportunity to adjudicate [plaintiff's] claims," and, accordingly, the Department issued its final administrative decision. *Woodford*, 548 U.S. at 90. The decision was that plaintiff would receive "[n]o further redress" and that "this issue [would] not be addressed further." It is hard

to imagine a clearer expression of finality. The issue would not be addressed further—not by the institutional counselor, not by the grievance officer, not by the chief administrative officer, not by anyone in the Department. Under Illinois law, "[e]xhaustion of all administrative remedies available occurs when a final administrative decision is rendered." *Krecek v. Board of Police Commissioners*, 271 Ill. App. 3d 418, 426 (1995). The "Return of Grievance of Correspondence" leaves no doubt that it is a final administrative decision and that no remedies will be available. Thus, exhaustion of administrative remedies has occurred. See *id.*

¶ 33                                    C. The Irrelevance of Section 3-4-3

¶ 34    Defendants argue that section 3-4-3 of the Unified Code (730 ILCS 5/3-4-3 (West 2014)) has nothing to do with the price of photocopies, but pertains only to inmate trust funds and property and the Department's accounting records. We do not see the relevance of section 3-4-3, either.

¶ 35                         D. The Right of Prisoners to Petition for
                    the Performance of a Clear, Ministerial Legal Duty
                to the Extent That Substantial Justice Weighs in Their Favor

¶ 36    Defendants quote a statement we made in *Ashley*, 316 Ill. App. 3d at 1258: "Illinois law creates no more *rights* for inmates than those which are constitutionally required." (Emphasis in original.) Although *Ashley* was correctly decided, we recently retreated from that quoted statement because it was too broad. *Fillmore v. Taylor*, 2017 IL App (4th) 160309, ¶¶ 98-99.

¶ 37    As we explained in *Fillmore*, the law that a prisoner seeks to enforce by a *mandamus* action need not be a constitutional right. The law can be, alternatively, a regulation (*id.* ¶ 98) or a statute (*id.* ¶ 99). Regardless of what form the law is in, it must impose upon the governmental officer a clear, nondiscretionary duty (*id.*), and "substantial justice" must weigh in favor of an order of *mandamus* compelling the performance of that duty (*id.* ¶ 100).

¶ 38            E. The Distinction Between a (Nonexistent) Right to Unlimited Photocopies
                and the Right To Insist That the Department Follow Its Own Regulation
                        Regarding the Determination of Photocopy Charges

¶ 39    Citing *Turner-El v. West*, 349 Ill. App. 3d 475, 481-83 (2004), defendants say the appellate court "has already determined that inmates do not have an absolute right to photocopies of documents at all, let alone pricing calculated in a particular manner."

¶ 40    The appellate court held in *Turner-El*: "[T]he right of access to the courts does not include the right to make photocopies, unless the denial of copying privileges actually prevents the inmate from accessing the courts." *Id.* at 483. Typically, it would not do so, because prisoners are permitted to file handwritten documents, including handwritten copies of printed or typed documents. *Id.* Thus, the paralegals at Menard Correctional Center "had no clear, nondiscretionary ministerial duty to photocopy any of the plaintiff's pleadings or grievances that the plaintiff himself could have duplicated with conformed copies," that is, handwritten copies. *Id.*

¶ 41    Plaintiff in this case does not argue that any of the staff at Lawrence Correctional Center had a clear, nondiscretionary ministerial duty to make whatever photocopies he requested. Instead, he argues that when it comes to determining how much he or any other inmate at a

- 8 -

given facility should pay per photocopy (assuming that the staff at the facility agrees to make the requested photocopies), the Department should follow its own regulation, section 430.40(a), by allowing the facility to determine for itself "[t]he cost for reproduction," "based on actual cost per copy," instead of imposing a uniform rate upon all facilities—a rate that happens to be double the rate that, apparently, Lawrence Correctional Center had determined. 20 Ill. Adm. Code 430.40(a) (1984). *Turner-El* has nothing to say about that argument, or about section 430.40(a).

¶ 42    But *Turner-El* does say this: "*Mandamus* proceedings are the proper means by which to compel the Department to follow its own rules. [Citation.] *Mandamus* may be used to compel a public officer to perform a duty that does not involve the exercise of discretion by the officer ***." *Turner-El*, 349 Ill. App. 3d at 479. Again, section 430.40(a) reads as follows: "Materials may be photocopied by the library. The cost for reproduction *will be determined by the facility* based on actual cost per copy and charged to the committed person." (Emphasis added.) 20 Ill. Adm. Code 430.40(a) (1984). Unlike "may," which bestows discretion (*County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 23), "will" expresses a command (Merriam-Webster's New Collegiate Dictionary 1349 (10th ed. 2000)). Imposing a uniform photocopy rate upon all facilities would seem to violate that command.

¶ 43                                    F. Sovereign Immunity

¶ 44    Defendants argue that because this action is based on a state law or regulation, sovereign immunity bars the action. The Illinois Constitution provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. Afterward, the General Assembly reestablished sovereign immunity by passing the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2014)). *Illinois County Treasurers' Ass'n v. Hamer*, 2014 IL App (4th) 130286, ¶ 40. Section 1 of the State Lawsuit Immunity Act provides that the state shall not be made a defendant or party in any court "[e]xcept as provided in the Illinois Public Labor Relations Act [(5 ILCS 315/1 *et seq.* (West 2014))], the Court of Claims Act [(705 ILCS 505/1 *et seq.* (West 2014))], the State Officials and Employees Ethics Act [(5 ILCS 430/1-1 *et seq.* (West 2014))], and Section 1.5 of this Act [(745 ILCS 5/1.5 (West 2014))]." 745 ILCS 5/1 (West 2014). The Court of Claims Act in turn provides that the Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2014). Defendants argue that because plaintiff's action is founded upon a state regulation—namely, section 430.40(a)—the doctrine of sovereign immunity bars the action. See *id.*

¶ 45    The answer to that argument is quite simple: the doctrine of sovereign immunity is inapplicable because this is not an action against the State. The supreme court has explained:

> "[A *mandamus*] action to compel a public official to perform a clear and mandatory duty is not a suit against the State. [Citations.] This is because [t]he presumption obtains that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State and such officer or head may be restrained by a proper action instituted by a citizen." (Internal quotation marks omitted.) *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 189 (1984).

See also *Hamer*, 2014 IL App (4th) 130286, ¶ 41; *Farmer v. McClure*, 172 Ill. App. 3d 246, 254 (1988).

¶ 46                              G. The Lack of a Genuine Issue as to
                                  the Actual Cost of a Photocopy

¶ 47        Again, section 430.40(a) of the Department's rules provides: "Materials may be photocopied by the library. The cost for reproduction will be determined by the facility based on actual cost per copy and charged to the committed person." 20 Ill. Adm. Code 430.40(a) (1984). Even if, in violation of 430.40(a), the Department's headquarters rather than the facility determined the cost for reproduction, "substantial justice" is an essential criterion in an action for *mandamus*, and the violation inflicted no injustice upon plaintiff unless the cost the Department's headquarters had determined was greater than the actual cost of reproduction—for, by law, the facility ought to be charging the actual cost. See *Beer Barn, Inc. v. Dillard*, 227 Ill. App. 3d 68, 70 (1992); *Hill v. Butler*, 107 Ill. App. 3d 721, 727 (1982).

¶ 48        In the proceedings below, Brunk presented his affidavit that "the actual cost per copy, across [the Department's] facilities, was 10 cents for a single-sided copy and 20 cents for a double-sided copy." The supreme court has held: "[F]acts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion." *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986); see also *Heidelberger v. Jewel Companies, Inc.*, 57 Ill. 2d 87, 92-93 (1974) ("Where facts contained in the affidavit in support of a motion for summary judgment are not contradicted by counteraffidavit, such facts are admitted and must be taken as true."). In support of his contention that the actual cost of reproduction was less than the cost the Department's headquarters had determined, plaintiff presented materials he had obtained through a Freedom of Information Act request, but those materials were unsworn. They were not affidavits, nor were they authenticated by any affidavit. It follows that, under the unqualified holdings of *Purtill* and *Heidelberger*, it was admitted and taken as true that the actual cost of reproduction was 10 cents for a single-sided photocopy and 20 cents for a double-sided photocopy, as Brunk averred in his affidavit. It further follows that the alleged violation of section 430.40(a) inflicted no injustice upon plaintiff and, therefore, he was not entitled to an order of *mandamus*. See *Beer Barn*, 227 Ill. App. 3d at 70; *Hill*, 107 Ill. App. 3d at 727.

¶ 49        In his petition for rehearing, plaintiff argues that the injustice of the fee increase is obscured by the bald conclusion of Brunk's affidavit. The actual cost, to a facility, of each photocopied page is a conclusion, which necessarily, as Brunk himself suggests in his affidavit, rests upon particular facts, *e.g.*, the cost of paper, the cost of renting the machine, and the cost of labor in overseeing the photocopier. Plaintiff objects that, absent a specification of those underlying facts and a mathematical explanation of how Brunk arrived at 10 cents per single-sided photocopy, his affidavit offers merely a self-serving conclusion. Plaintiff quotes Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013): "Affidavits *** in opposition to a motion for summary judgment *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

¶ 50        The trouble is, this is a new argument. In his initial brief, plaintiff said nothing about the conclusory nature of Brunk's affidavit or its noncompliance with Rule 191(a). Consequently,

defendants received no fair opportunity to respond to that argument. "Points not argued" in the initial brief on appeal "are waived"—that is to say, forfeited—"and shall not be raised *** on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Plaintiff has forfeited the point that Brunk's affidavit is conclusory. See *id.*

¶ 51 Even so, assuming the sufficiency of Brunk's affidavit, plaintiff argues that, in his own *sworn* submissions, he created a material issue of fact in opposition to Brunk's affidavit. In his own affidavit, plaintiff averred there was no cost, to the Department, for toner or maintenance. Also, he presented an affidavit by the prison law librarian that making photocopies involved no staff labor.

¶ 52 Neither of those affidavits creates a material issue of fact. As for plaintiff's affidavit, the trial court could have justifiably disregarded his averment that the Department paid nothing for toner or maintenance because it did not affirmatively appear that plaintiff was competent to make that averment. See *Betts v. City of Chicago*, 2013 IL App (1st) 123653, ¶ 24. He had to "affirmatively show," in his affidavit, that "if sworn as a witness," he could "testify competently" that toner and maintenance were free to the Department. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). To testify competently means to give testimony that is admissible under the Illinois Rules of Evidence, including the rules pertaining to hearsay (Ill. R. Evid., art. VIII (eff. Jan. 1, 2011)). See *People v. Clark*, 108 Ill. App. 3d 1071, 1081 (1982); Merriam-Webster's Collegiate Dictionary 234-35 (10th ed. 1998) (defining "competent" to include "legally qualified or adequate," as in "a [competent] witness"). It is unclear how plaintiff could know that toner and maintenance were free to the Department unless employees of the Department had told him so. The statements of those employees to plaintiff would be hearsay if, in a trial, he testified to those statements. The statements would be "other than [those] made by the declarant[s] while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). We see no indication in the record that the declarants were defendants in this case. See Ill. R. Evid. 801(d)(2) (eff. Jan. 1, 2011) (excluding, from the definition of hearsay, a statement by a party-opponent). By presenting what appears to be inadmissible hearsay, plaintiff's affidavit does not rebut Brunk's affidavit. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 53 An affidavit by the law librarian, stating that inmates make their own photocopies, does not rebut Brunk's averment that there is a labor cost associated with the photocopy machines. The machines might require the attention of prison staff in other ways, such as refilling the machines with paper, putting in new toner cartridges, fixing paper jams, and just keeping an eye on the machines. Therefore, we continue to find an absence of any genuine issue of material fact, and we deny the petition for rehearing.

¶ 54 III. CONCLUSION

¶ 55 For the foregoing reasons, we affirm the trial court's judgment.

¶ 56 Affirmed.