DANIEL PARKER, Plaintiff-Appellant, v. DONALD L. SNYDER, JR., Director, *et al.*, Defendants-Appellees.

Fourth District   No. 4—03—0745

Opinion filed September 29, 2004.

Daniel Parker, of Menard, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Carol A. Cera, Assistant Attorney General, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, Daniel Parker, appeals the trial court's grant of summary judgment in his *pro se* action for *mandamus,* in favor of defendants, Donald L. Snyder, Jr. (Director), and the Department of Corrections (DOC). On appeal, the issue is whether plaintiff is entitled to *mandamus* relief. We affirm.

On March 16, 1995, DOC classified plaintiff as a Level E inmate, reflecting that he presented an extremely high risk of escape. Plaintiff had previously been found guilty of the offense of attempted escape in a prison disciplinary proceeding.

On July 27, 2000, Roger D. Cowan, warden of Menard Correctional Center, issued a procedural bulletin addressed to all Level E inmates, stating the following: "Effective August 1, 2000, the following changes mandated by Administrative Directive will require your visits be non-contact only. The number of adult visitors on your visiting list will be limited to ten."

On September 7, 2000, defendant Kenneth R. Briley, warden of Stateville Correctional Center, issued Warden's Bulletin No. 00—111, regarding extremely high level escape risk visits. The bulletin stated the following:

"Effective 10/1/00, all visits for inmates who are classified as extremely high level escape risks will be conducted in the non-contact visiting room. Only ten persons, 17 years or older, will be approved to visit an inmate who is classified as an extremely high level escape risk. Only two persons may visit at any one time. Special visiting lists will be distributed to all affected inmates. Inmates are responsible for notifying prospective visitors of these policy changes."

Plaintiff filed a number of grievances related to the aforementioned administrative directives. Grievance officers denied those grievances contained in the record on appeal, stating that each such denial was based on plaintiff's high risk of escape and/or Level E status and was mandated by an administrative directive. (One grievance filed and the response thereto are not contained in the record.)

On June 21, 2002, plaintiff filed a *pro se* petition for *mandamus* relief pursuant to article XIV of the Illinois Code of Civil Procedure (735 ILCS 5/14—101 through 14—109 (West 2002)) against defendants, the Director; Briley; George E. DeTella, Associate Director of DOC; and Jonathan R. Walls, warden of Menard Correctional Center. The petition alleged, *inter alia,* that the loss of contact visitation privileges violated state law and substantive due process. On February 11, 2003, the trial court dismissed without prejudice defendants DeTella, Briley, and Walls, where they were sued in their official capacities. On May

19, 2003, plaintiff filed a motion for partial summary judgment. On June 16, 2003, the State filed a cross-motion for summary judgment. On July 28, 2003, the court denied plaintiff's motion for summary judgment and granted the State's motion for summary judgment. This appeal followed.

Plaintiff argues that the trial court erred by denying his motion for summary judgment and granting the State's motion for summary judgment where the facts show (1) restriction of his visiting privileges to "non-contact only" was inconsistent with the relevant statutes as they existed prior to the enactment of Public Act 89—688 (Pub. Act 89—688, eff. June 1, 1997 (1996 Ill. Laws 3738)), which has been declared unconstitutional (*People v. Burdunice*, 211 Ill. 2d 264, 271, 811 N.E.2d 678, 683 (2004)), and (2) such restrictions violated his substantive due-process rights.

Summary judgment is proper where the pleadings, depositions, and admissions on file, together with any affidavits, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Roth v. Opiela*, 211 Ill. 2d 536, 542, 813 N.E.2d 114, 117 (2004); 735 ILCS 5/2—1005 (West 2002). The standard of review on appeal for the grant or denial of a motion for summary judgment is *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258, 811 N.E.2d 670, 674 (2004).

As we stated recently in *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004):

" '*Mandamus* is an extraordinary remedy to enforce, as a matter of right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved." ' *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229, 710 N.E.2d 798, 813 (1999), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514, 501 N.E.2d 1267, 1272 (1986). A court will award a writ of *mandamus* 'only if a plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ.' *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002). A plaintiff must set forth every material fact necessary to show he or she is entitled to a writ of *mandamus*, and the plaintiff bears the burden to establish a clear, legal right to it. *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981)."

Plaintiff first argues that his visitation restrictions are inconsistent with sections 3—7—2(f) and 3—8—7(b)(2) of the Unified Code of Corrections (Unified Code) as they existed prior to the enactment of Public Act 89—688, which was declared unconstitutional. See 730 ILCS 5/3—7—2(f), 3—8—7(b)(2) (West 1996). The State acknowledges that Public

Act 89—688 is unconstitutional and therefore void but argues that defendants complied with state law as it existed prior to Public Act 89—688's enactment.

The previous version of section 3—7—2(f) of the Unified Code provided as follows:

"All of the institutions and facilities of the Department shall permit every committed person *to receive visitors*, except in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility. Clergy, religious chaplain and attorney visiting privileges shall be as broad as the security of the institution or facility will allow." (Emphasis added.) 730 ILCS 5/3—7—2(f) (West 1996).

The plain language of section 3—7—2(f) does not grant unrestricted visitation; it merely allows inmates to receive visitors, and even then just to the extent it does not hinder the safety or security of the institution or facility. Here, plaintiff was not denied all visitation, nor were the restrictions so burdensome as to constructively deny him visitation under section 3—7—2(f). The visitation restrictions placed on plaintiff were not disciplinary; rather, they were discretionary safety and security measures applied to all prisoners in the respective facilities. Accordingly, section 3—7—2(f) would not even apply to plaintiff's situation.

The previous version of section 3—8—7(b)(2) of the Unified Code, addressing disciplinary procedures, read as follows:

"Disciplinary restrictions on visitations, work, education or program assignments, and the use of the prison's library shall be related as closely as practicable to abuse of such privileges or facilities. This paragraph shall not apply to segregation or isolation of persons for purposes of institutional control." 730 ILCS 5/3—8—7(b)(2) (West 1996).

Citing section 3—1—2(h) of the Unified Code, which defines "discipline" (730 ILCS 5/3—1—2(h) (West 2000)), plaintiff contends that his visitation restrictions constitute "disciplinary restrictions" that bring his situation within the scope of section 3—8—7(b)(2).

Section 3—1—2(h) defines "discipline" as "the rules and regulations for the maintenance of order and the protection of persons and property within the institutions and facilities of the Department and their enforcement." 730 ILCS 5/3—1—2(h) (West 2000). The Unified Code does not define "disciplinary restriction," but where the words and phrases defined under the Unified Code have a particular context that clearly requires a different meaning, the contextual meaning controls (730 ILCS 5/3—1—1 (West 2000)).

We reject plaintiff's attempt to equate the general term "discipline" with the specific term "disciplinary restrictions" under the Unified Code. A review of the statutory sections within the Unified Code conclusively shows that "disciplinary" is applied to individual acts and the sanctions thereto, while "discipline" applies to institutional control generally. See 730 ILCS 5/3—1—1 through 8—6—1 (West 1996 & 2000). Section 3—8—7 of the Unified Code is no different.

The restrictions attached to the Level E classification were "reasonable security measures to classify those inmates who have exhibited behavior which indicates they are likely to attempt an escape." The restrictions were not a "disciplinary" measure for plaintiff's 1995 attempted escape, an infraction for which DOC imposed separate sanctions against plaintiff only. We find no suggestion that defendants acted outside the scope of their discretionary powers "[t]o develop and maintain programs of control" and "[t]o make all rules and regulations and exercise all powers and duties vested by law in the Department." 730 ILCS 5/3—2—2(d), (m) (West 2000).

Plaintiff also argues that his visitation restrictions deprived him of his substantive due-process rights. We need not address whether plaintiff has a protectable liberty interest in the level of visitation allowed. Even if plaintiff had such an interest, these matters do not involve fundamental constitutional rights; therefore, the rational-basis test applies. *People v. R.G.*, 131 Ill. 2d 328, 342, 546 N.E.2d 533, 540 (1989).

The restrictions attached to the Level E classification were reasonable security measures to classify those inmates exhibiting behavior indicating they are likely to attempt an escape. Placing restrictions on the contact of such inmates with outside individuals is rationally related to safety and security concerns. Accordingly, plaintiff's substantive due-process argument fails.

Plaintiff had no clear right to relief, and defendants were entitled to judgment as a matter of law. The trial court properly denied plaintiff's petition for *mandamus*.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK and TURNER, JJ., concur.