NOTICE

This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200440-U

NO. 4-20-0440

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 18, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PAUL SMITH, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Livingston County |
| GINGER DAVIS and JENNIFER SMITH, | ) | No. 18MR115 |
| Defendants-Appellees. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's dismissal of plaintiff's
complaint was proper under section 2-615 of the Code of Civil Procedure (735
ILCS 5/2-615 (West 2018)) for failure to state a claim when he was informed he
would be charged for copies of his medical records in excess of 50 pages. Further,
the trial court's denial of plaintiff's motion for entry of a default judgment against
defendant Smith was a proper exercise of its discretion.

¶ 2    Plaintiff, Paul Smith, is an inmate in the custody of the Illinois Department of

Corrections and housed at Pontiac Correctional Center (Pontiac) who claims he was being

overcharged for copies of his medical records. He filed a complaint for declaratory and

injunctive relief and unspecified compensatory and punitive damages, as well as fees and costs.

Named as defendants were Department of Corrections employee Ginger Davis, who served as a

health care administrator at Pontiac, and Medical Records Director Jennifer Smith, an employee

of Wexford Health Services, Inc., who also worked at Pontiac. Smith's appearance was delayed after there was some question about service of process and whether the Office of the Attorney General (AG) would be representing her as well as Davis. Plaintiff filed a motion for a default judgment as to Smith, which was denied by the trial court. Both defendants moved to dismiss plaintiff's complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), arguing the complaint failed to state a claim upon which relief could be granted. The trial court granted the motions, plaintiff's motion for reconsideration was denied, and this appeal follows.

¶ 3                                    I. BACKGROUND

¶ 4          After a request by plaintiff for two separate sets of records from his medical file in May 2018, he was informed by way of a responsive memorandum that inmates were entitled to the first 50 copies of pages from their medical record free of charge each year. For additional pages requested within any given year, the inmate would be charged $0.15 per page. The memo informed plaintiff that since his request exceeded the free 50-page limit, he was required to resubmit his request with a signed authorization for payment. He was also advised if funds were not available, his request would have to be submitted to the warden. Because one of plaintiff's claims relates to the propriety of the trial court's denial of his motion to default Smith, we are compelled to discuss the pleading chronology in detail.

¶ 5          In July 2018, plaintiff filed a complaint in the Livingston County circuit court, which he characterized as a "civil rights action" against the two named defendants for violating what he described as his "Constitutional [*sic*] protected Right To Copies of [his] Medical Records." He sued the named defendants in both their individual and official capacities, claiming they improperly refused his requests for medical records they contend are not in his file, and for

- 2 -

refusing to provide copies of other records which he maintains would not exceed the 50-page limit. Plaintiff further contended the page-limit policy was an unlawful "custom and practice" and that Davis "intentionally discriminat[ed] against Plaintiff due to the large volume of complaints made against Davis and the health care staff." Plaintiff further contended the policy violated the Illinois Administrative Code as well as other state statutes. He claimed no adequate "remedy of law" and an ongoing violation of his constitutional rights unless the policy was enjoined. Plaintiff sought declaratory and injunctive relief and "actual, consequential, compensatory and punitive damages" in an unspecified amount, along with reasonable fees and costs.

¶ 6        The court file reflected service on defendants in August 2018, and an entry of appearance by the AG on behalf of Davis the same day the Sheriff's Return was filed on August 24, 2018. Davis's counsel requested two extensions of time to file responsive pleadings on her behalf and on November 15, 2018, the trial court allowed both defendants "an additional 60 days leave to file an entry of appearance and responsive pleading." The next day, plaintiff filed a "request for entry of default" and "request for entry of default judgment" along with various supporting documents. Plaintiff then sought leave to file an amended complaint in November 2018, and in January 2019, the AG filed a motion to dismiss the original complaint under section 2-615, along with a supporting memorandum. Two months later, plaintiff responded to the motion after receiving an extension of time to do so. From a review of the docket entries, it appears the trial court believed the AG was representing both Davis and Smith from the outset, and after being made aware no appearance or formal pleading had been filed on Smith's behalf, the trial court continued the matter to determine the status of the parties. The AG advised the court in September 2019 it would not be representing Smith due to her employment with

Wexford Health Sources, Inc., a contractual health care service, which placed her outside the scope of their representation. Plaintiff sought an "expedited hearing" on his motion to default her.

¶ 7            In October 2019, plaintiff filed a request for a supervisory order from the Illinois Supreme Court ordering the trial court to default Smith, which does not appear to have been addressed. Counsel for Smith entered their appearance on November 1, 2019, and filed a section 2-615 motion to dismiss similar to the one filed by Davis and still pending before the court. Plaintiff filed a response, contending the motion should be stricken due to his pending motion to default Smith, which motion must be entered, defendant contended, "as a matter of law."

¶ 8            In January 2020, by way of a docket entry, the trial court denied plaintiff's motion to strike Smith's motion to dismiss as well as plaintiff's motion for an expedited hearing. The court accepted Smith's late appearance and late filing "without prejudice to either party." Plaintiff was given 45 days to respond to the section 2-615 motions and defendants 21 days thereafter. All other motions were continued generally pending the outcome of the motions to dismiss.

¶ 9            In July 2020, the trial court found plaintiff failed to properly plead a cause of action for declaratory relief and granted the motions to dismiss. Plaintiff filed a timely motion to reconsider, which was also denied. Plaintiff has elected to appeal from the trial court's ruling rather than seek to replead.

¶ 10          This appeal followed.

¶ 11                                II. ANALYSIS

¶ 12                          A. Standard of Review—Dismissal

¶ 13    "A section 2-615 motion to dismiss tests the legal sufficiency of the complaint. The question on review is whether the allegations of the complaint, taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. [Citation.] A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. [Citation.] The standard of review is *de novo*. [Citation.]" *Fillmore v. Taylor*, 2019 IL 122626, ¶ 35, 137 N.E.3d 779.

¶ 14                    B. Dismissal of the Complaint

¶ 15                    1. *In the Trial Court*

¶ 16    Both Davis and Smith filed motions to dismiss under section 2-615, contending the facts alleged in plaintiff's complaint did not properly plead a cause of action upon which relief could be granted. Davis noted plaintiff's complaint failed to identify a cause of action, intentional wrongdoing, or legal authority for his claimed "right" to free copies of his medical records as alleged.

¶ 17    Plaintiff's complaint sought declaratory and injunctive relief as well as monetary damages, all within the confines of what he described as a "civil rights action." According to count I, plaintiff requested copies of pages from his medical records from Davis but was told some of the requested pages were not in his medical file, and for requested pages contained in the file he would be charged a copying fee of "$0.15 per page after 50 pages." He does not claim either defendant intentionally removed or destroyed the missing pages. Obviously, defendants said they cannot be held liable simply because they are unable to copy and produce records they do not have. Plaintiff further claimed that by imposing the copying charge the State was "intentionally discriminating against Plaintiff due to the large volume of complaints made

against [Defendant] Davis and the Health Care Staff" and that defendants have "created an unlawful policy, custom and practice" by limiting plaintiff to one copy of his medical records not exceeding 50 pages per year. Defendants argued plaintiff does not allege anywhere in count I facts supporting his conclusory allegations or the authority supporting his claim the facility's practice of charging for copies more than 50 pages per year is unlawful. Davis pointed out that none of these allegations stated a cause of action against either defendant. Smith's motion also said plaintiff failed to identify a cause of action in count I and plaintiff was unable to identify any statute, regulation, or other law guaranteeing him free and unlimited access to his medical records, or any provision of the Illinois Constitution doing so.

¶ 18        According to count II, the policy violated the Illinois Administrative Code, a directive from the warden, the Illinois Constitution, and "state law procedures" and has created a "conflict of interest" with plaintiff. Plaintiff contended the response from Davis violated administrative regulations, state law, and his constitutional rights. Defendants counter by arguing the conclusory claims they have somehow violated administrative rules or statutes do not state a cause of action. This is equally true when plaintiff merely paraphrases the elements of a cause of action in conclusory terms, without showing how the rules or statutes in question give plaintiff a protectible right. See *Paul v. County of Ogle*, 2018 IL App (2d) 170696, ¶ 34, 103 N.E.3d 585. Again, plaintiff failed to cite any provision of Illinois law or the Illinois Constitution which entitles him to free and unlimited access to his medical records, and merely claiming such right to exist does not make it so. He contends section 415.30 of Title 20 of the Illinois Administrative Code guarantees him the right to free medical records when, in fact, it provides that offenders "shall be informed of the institutional procedures for obtaining medical, dental, or mental health services," offenders "shall be provided medical and dental treatment," and that "[a] record of all

- 6 -

medical and dental examinations, findings, and treatment shall be maintained." 20 Ill. Adm. Code 415.30(e), (f), and (l) (2007). There is no provision in the code granting an inmate the right to copies of medical records, free or otherwise, and he is not free to imply such a cause of action exists. Although the Illinois Administrative Code has the force and effect of law (*Fillmore*, 2019 IL 122626, ¶ 28 (citing *Fillmore v. Taylor*, 2017 IL App (4th) 160309, ¶ 98, 80 N.E.3d 835)), it says nothing about free and unlimited copies of medical records for inmates, and access to copies is not the sort of judicially enforceable right entitled to protection. See *Turner-El v. West*, 349 Ill. App. 3d 475, 483, 811 N.E.2d 728, 735 (2004).

¶ 19            In addition, a departmental directive, such as that from the warden referenced by plaintiff here, is " 'a prison regulation primarily designed to guide correctional officers in the administration of a prison' " and as such, " '[is] not designed to confer rights on inmates.' " *Fillmore*, 2019 IL 122626, ¶ 48 (quoting *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995)). Citing with approval this court's earlier decision in *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 739 N.E.2d 897 (2000), our supreme court held, "the *Ashley* court was correct in stating that the Department regulations create no more rights for inmates than those that are constitutionally required." *Fillmore*, 2019 IL 122626, ¶ 49. The trial court expressly found plaintiff's complaint failed to state a proper claim for any identifiable cause of action, noting how although he characterized his complaint as one seeking a declaratory judgment, he failed to plead the proper elements for one.

¶ 20                                            2. *On Appeal*

¶ 21            The question before us is, even assuming plaintiff's allegations were true, and viewed in their most favorable light, do they state a cause of action upon which relief can be granted? As a fact-pleading jurisdiction, Illinois requires a plaintiff to set forth a legally recognized claim and plead facts, not conclusions, which support each necessary element. *Doe v.*

*Coe*, 2019 IL 123521, ¶ 32, 135 N.E.3d 1. Although we are to construe pleadings liberally, such construction "does not correct or replace defective allegations." *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 31, 76 N.E.3d 105.

¶ 22        On appeal, plaintiff contends the trial court erred in dismissing his complaint "for allegedly styling his complaint as a declaratory judgment complaint" and for concluding plaintiff failed to specify a cause of action or plead the proper elements for an action for declaratory relief. His brief is, in part, a repeat of his motion to reconsider, filed after the trial court ruled against him by dismissing his complaint. Before the trial court, plaintiff argued his complaint alleged three forms of relief commonly recognized in the law. That statement may be true to the extent that declaratory and injunctive relief as well as money damages are commonly recognized forms of relief, but such an assertion is not the same as stating a cause of action for any of them. Plaintiff does not allege why he is entitled to any such relief. Plaintiff does not allege a controversy regarding the respective rights of the parties subject to adjudication by a court. He does not allege any ongoing harm or ongoing violation of any recognized constitutional rights. And he does not allege any actual harm or damages he suffered. He does not allege he is unable to pay for the copies or that he cannot obtain them by the alternative means referenced in the policy.

¶ 23        As noted by Davis, there *is* a provision of the Department of Corrections's regulations that requires disclosure of medical records to an offender upon written request (20 Ill. Adm. Code 107.310(b) (2007)), but subsection (f) also provides that "the Department may require payment of copying costs for any records produced." 20 Ill. Adm. Code 107.310(f) (2007). There is also a provision in the Hospital Records Act (735 ILCS 5/8-2001(d) (West 2018)) permitting patients to obtain copies of their medical records, but it also requires the

requestor to "reimburse the facility or the health care practitioner at the time of such copying for all reasonable expenses *** incurred in connection with such copying." Plaintiff failed to cite any Illinois authority entitling him to free copies of his medical records beyond that which the institution provided in the "unconstitutional" policy to which he objected.

¶ 24 Plaintiff's reliance on the warden's bulletin is equally faulty. The bulletin does not, as plaintiff argues, entitle him to 50 free pages *per request*. Instead, it states, "You will get the first 50 pages free and you will be charged 15 cents for each page after that." More importantly, the interpretation placed on this bulletin by defendants is more expansive than that of the bulletin. The language of the bulletin can easily be interpreted to mean the first 50 pages requested, while the memorandum plaintiff received from Medical Records, and which precipitated this controversy, referenced the first 50 pages "of the year."

¶ 25 Regardless, bulletins from the warden are "administrative directives." *Parker v. Snyder*, 352 Ill. App. 3d 886, 887, 817 N.E.2d 126, 127 (2004). An "administrative directive" is not the same as an "administrative rule" and therefore creates no duty on the part of the agency. *Edens v. Godinez*, 2013 IL App (4th) 120297, ¶ 18, 985 N.E.2d 312. "An administrative directive is directed solely at the staff of the agency, not at the public, and hence it creates no duty on the part of the agency toward the public." (Internal quotation marks omitted.) *Edens*, 2013 IL App (4th) 120297, ¶ 18.

¶ 26 Plaintiff failed to allege facts showing he could meet the first of the three elements of a declaratory judgment action—a legal tangible interest. *Beahringer v. Page*, 204 Ill. 2d 363, 372, 789 N.E.2d 1216, 1223 (2003). He was unable to support his claimed entitlement to free and unlimited records with any statute, rule, or policy, or point to any act by defendants which resulted in compensable harm to him. As to the other necessary elements, the parties

unquestionably had opposing interests, and there was an actual controversy concerning those interests. See *Beahringer*, 204 Ill. 2d at 372. However, the presence of the other two elements essential to a declaratory judgment claim does not make up for the absence of the first.

¶ 27 A similar defect precludes a valid claim for injunctive relief. Plaintiff cannot show "a clear and ascertainable right in need of protection." *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44, 50 N.E.3d 643. As to money damages, plaintiff never alleged the payment of the copying charge or any other monetary damage he suffered.

¶ 28 For all these reasons, the trial court's dismissal of plaintiff's complaint under section 2-615 was not in error. We would note, as an aside, neither defendant asked for plaintiff's complaint to be dismissed with prejudice and, in fact, defendants' motions suggested it should be dismissed without prejudice. Likewise, the trial court's docket order did not show the dismissal to be with prejudice. "Normally an order striking or dismissing a complaint is not final and therefore not appealable unless its language indicates the litigation is terminated and the plaintiff will not be permitted to replead." (Internal quotation marks omitted.) *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 25, 36 N.E.3d 892. However, "where a dismissal order does not specify that it is 'without prejudice,' or that plaintiff was granted leave to file an amended complaint, the dismissal order is a final adjudication on the merits." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25, 53 N.E.3d 1. In this instance, the trial court disposed of the litigation through its docket order when, after granting defendants' motions to dismiss, the court stated, "This cause is dismissed." Although plaintiff sought reconsideration of the dismissal order, he never requested the opportunity to replead, so the order stands dismissing the cause of action. "By failing to ask for leave to amend after the circuit court enters an order dismissing a complaint, a plaintiff elects to stand on the complaint and a subsequent order dismissing the suit

may be entered." *Richter*, 2016 IL 119518, ¶ 28. When the trial court denied plaintiff's motion for reconsideration, the previous order of dismissal became final and appealable. *Richter*, 2016 IL 119518, ¶ 28. The fact the trial court did not address the remaining outstanding motions, including plaintiff's motion for default, is further evidence of the finality of the trial court's order.

¶ 29                    C. Plaintiff's Motion for Default

¶ 30          " '[W]hether to grant or deny a motion [for default] under section 2-1301[(730 ILCS 5/2-1301 (West 2010))] is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion or a denial of substantial justice.' " *CitiMortgage, Inc. v. Moran*, 2014 IL App (1st) 132430, ¶ 23, 29 N.E.3d 50 (quoting *Jackson v. Bailey*, 384 Ill. App. 3d 546, 548, 893 N.E.2d 280, 283 (2008)). An abuse of discretion occurs when " 'the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view.' " *CitiMortgage*, 2014 IL App (1st) 132430, ¶ 24 (quoting *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 26, 994 N.E.2d 665). While it is true the trial court may enter a default judgment for want of an appearance, "a default judgment is a drastic measure, not to be encouraged and to be employed only as a last resort." *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 57, 960 N.E.2d 1 (citing *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 573-74, 786 N.E.2d 227, 229 (2003)). "A trial court should deny a motion for default judgment when it results in the denial of substantial justice." *Dupree*, 2011 IL App (4th) 100351, ¶ 57.

¶ 31          Plaintiff contends the trial court erred by not defaulting Smith for failing to appear in a timely fashion. As we noted above, the trial court declined to address this and other motions filed by plaintiff until hearing the motions to dismiss. Once the dismissal motions were granted,

and defendant, even in his request for reconsideration, did not seek to replead or seek a resolution of his outstanding motions, the dismissal became final. *Richter*, 2016 IL 119518, ¶ 28. Regardless, it is evident from the record there was an apparent mix-up in the service of summons and notice to the AG. Plaintiff had prepared summons for each defendant, which were filed with his complaint on July 25, 2018. The summons returns for both defendants, dated August 20, 2018, appear, however, to be directed to two copies of a summons in Davis's name only. The summons in Smith's name has no return attached. It became apparent the AG entered its appearance for Davis, and the trial court assumed it was appearing for both defendants.

¶ 32        After plaintiff brought this matter to the trial court's attention, the trial court directed the AG to ascertain the extent of its representation and was subsequently advised the AG would not be representing Smith, as she was a contractual employee of a state service provider. Thereafter, Smith's counsel entered their appearance and filed a section 2-615 motion to dismiss substantially like that already on file by Davis. Although it is true over 14 months passed before Smith entered an appearance, the only thing of substance occurring in the interim was Davis's motion to dismiss. Although plaintiff was persistent in his efforts to obtain a default judgment, it would have had no substantive effect. Section 2-1301(d) (735 ILCS 5/2-1301(d) (West 2018)) allows the trial court to "require proof of the allegations of the pleadings upon which relief is sought." Since the allegations against the defendants were substantially the same, it is highly unlikely the trial court would have allowed any default judgment to enter until it heard the pending motion to dismiss. Further, section 2-1301(e) permits the trial court, in its discretion, before a final order or judgment, or pursuant to a motion filed within 30 days of entry, to set aside any default. 730 ILCS 5/2-1301 (West 2018). "Where a litigant seeks to set aside a default under section 2-1301(e), *** the litigant need not necessarily show the existence of a

meritorious defense and a reasonable excuse for not having timely asserted such defense. [Citation.] Rather, the overriding consideration is simply whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *In re Haley D.*, 2011 IL 110886, ¶ 57, 959 N.E.2d 1108.

¶ 33　　　　Recall we are guided by the same "substantial justice" yardstick when deciding whether it was proper to deny entry of a default judgment in the first instance. *Dupree*, 2011 IL App (4th) 100351, ¶ 57. Considering the failure of plaintiff's complaint to identify or set forth the elements of a cognizable cause of action, no substantial justice would have been served either by allowing plaintiff's motion or refusing to set it aside. The trial court did not abuse its discretion in denying plaintiff's motion for a default judgment.

¶ 34　　　　　　　　　　　　III. CONCLUSION

¶ 35　　　　For the reasons set forth above, we find the trial court properly dismissed plaintiff's complaint under section 2-615 for failing to state a claim and we further find the trial court's denial of plaintiff's motion for entry of a default judgment was not an abuse of discretion. The judgment of the trial court is affirmed.

¶ 36　　　　Affirmed.